# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**    **2. PLEASE TYPE OR PRINT.**    **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption:<br><br>507 Summit LLC, KOA Capital L.P.<br><br>v.<br><br>Balance Law PLLC dba Balance Law Firm | District Court or Agency:<br><br>S.D.N.Y. | Judge:<br><br>Hon. Katherine H. Parker |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br>04/10/2026 | District Court Docket No.:<br><br>32 |
| | Date the Notice of Appeal was Filed:<br><br>05/11/2026 | Is this a Cross Appeal?<br><br>Yes  ✓ No |

| **Attorney(s) for Appellant(s):**<br><br>✓ Plaintiff<br><br>Defendant | Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail:<br><br>Jeffrey Chubak, Amini LLC<br>131 West 35th Street, 12th Floor, New York, NY 10001<br>Tel: (212) 490-4700; Email: jchubak@aminillc.com |
|---|---|
| **Attorney(s) for Appellee(s):**<br><br>Plaintiff<br><br>✓ Defendant | Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail:<br><br>Beixiao Robert Liu, Balance Law Firm<br>1 World Trade Center, Suite 8500, New York, NY 10007<br>Tel: (212) 741-8080; Fax: (631) 490-4465; Email: robert.liu@balancelawfirm.com |

| Has Transcript Been Prepared?<br><br>No | Approx. Number of Transcript Pages:<br><br>N/A | Number of Exhibits Appended to Transcript:<br><br>N/A | Has this matter been before this Circuit previously?   Yes   ✓ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

**ADDENDUM "A":** COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

**ADDENDUM "B":** COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

## PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| U.S. a party          Diversity<br><br>✓ Federal question          Other (specify):<br>(U.S. not a party)          _____ | ✓ Final Decision          Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b))<br><br>Interlocutory Decision<br>Appealable As of Right          Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**PART B:  DISTRICT  COURT DISPOSITION    (Check as many as apply)**

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| ✓ Pre-trial<br>During trial<br>After trial<br><br>Proceeding is miscellaneous discovery proceeding under 28 U.S.C. § 1782. | Default judgment<br>Dismissal/FRCP 12(b)(1)<br>  lack of subj. matter juris.<br>Dismissal/FRCP 12(b)(6)<br>  failure to state a claim<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>  frivolous complaint<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>  other dismissal<br><br>Dismissal/other jurisdiction<br>Dismissal/merit<br>✓ Judgment / Decision of the Court<br>Summary judgment<br>Declaratory judgment<br> Jury verdict<br>Judgment NOV<br>Directed verdict<br>Other (specify): | Damages:       Injunctions:<br><br>Sought: $ _____  Preliminary<br>Granted: $ _____  Permanent<br>Denied: $ _____  Denied<br><br>Decision granted motion to quash document subpoena served pursuant to 28 U.S.C. § 1782. |

**PART C:  NATURE OF SUIT    (Check as many as apply)**

| 1. Federal Statutes | | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|---|
| Antitrust<br>Bankruptcy<br>Banks/Banking<br>Civil Rights<br>Commerce,<br>Energy<br>Commodities<br>✓ Other (specify): 28 USC 1782 | Communications<br>Consumer Protection<br>Copyright □ Patent<br>Trademark<br>Election<br>Soc. Security<br>Environmental | Freedom of Information Act<br>Immigration<br>Labor<br>OSHA<br>Securities<br>Tax | Admiralty/<br>Maritime<br>Assault /<br>Defamation<br>FELA<br>Products Liability<br>Other (Specify): | Admiralty/<br>Maritime<br>Arbitration<br>Commercial<br>Employment<br>Insurance<br>Negotiable<br>Instruments<br>  Other Specify | Civil Rights<br>Habeas Corpus<br>Mandamus<br>Parole<br>Vacate Sentence<br>Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| Forfeiture/Penalty<br>Real Property<br>Treaty (specify): _____<br>Other (specify): _____ | Arbitration<br>Attorney Disqualification<br>Class Action<br>Counsel Fees<br>Shareholder Derivative<br>Transfer | Yes   ✓ No<br><br>Will appeal raise a matter of first impression?<br><br>Yes   ✓ No |

1.  Is any matter relative to this appeal still pending below?       Yes, specify: _____       ✓ No

2.  To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)     Arises from substantially the same case or controversy as this appeal?         Yes     ✓ No

    (B)     Involves an issue that is substantially similar or related to an issue in this appeal?         Yes     ✓ No

If yes, state whether     "A," or     "B," or     both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date:<br>05/19/2026 | Signature of Counsel of Record:<br>/s/ Jeffrey Chubak |
|---|---|

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

   1.   Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
   2.   File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
   3.   Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

        **PLEASE NOTE:   IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

## <u>ADDENDUM A</u>

### (1) NATURE OF THE ACTION

Petitioners 507 Summit LLC and KOA Capital L.P. (together, "Petitioners") commenced the underlying proceeding by applying to the District Court for an order pursuant to 28 U.S.C. § 1782 authorizing Petitioners to take document discovery of respondent Balance Law PLLC dba Balance Law Firm ("Respondent"), a U.S. law firm, for use in a Cayman appraisal proceeding. The District Court granted the application, after which Respondent moved to quash the resulting document subpoena. Petitioners opposed the motion to quash.

### (2) THE RESULT BELOW

The District Court granted Respondent's motion to quash, based on its determination that the same concerns that caused the Court in *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018) to preclude Section 1782 discovery from a U.S. law firm animate this matter.

### (3) NOTICE OF APPEAL AND DISTRICT COURT DOCKET SHEET

A copy of the notice of appeal is attached as Attachment 1.

A copy of the District Court docket sheet is attached as Attachment 2.

### (4) RELEVANT OPINIONS/ORDERS

A copy of the Opinion and Order on Application for Discovery for Use in a Foreign Proceeding is attached as Attachment 3.

A copy of the Opinion and Order on Motion to Quash is attached as Attachment 4.

## ADDENDUM B

The issues to be raised on appeal are whether the District Court erred in quashing Petitioners' document subpoena.

"We review the district court's refusal to enforce a subpoena for a clear abuse of discretion … Where a district court exercises its discretion premised on the misapplication of a legal principle, the court by definition abuses its discretion and makes an error of law … The resolution of this motion turns on the district court's application of" *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018) "and thus presents us with an issue of law." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 168 (2d Cir. 2003).

# <u>ATTACHMENT 1</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 507 SUMMIT LLC, KOA CAPITAL L.P.<br><br>                                    Applicants<br><br>v.<br><br>BALANCE LAW PLLC dba Balance Law Firm<br><br>                                    Respondent | Case 25-mc-235-KHP<br><br>**NOTICE OF APPEAL** |

Notice is hereby given that applicants 507 Summit LLC and KOA Capital L.P. (together, the "Applicants"), appeal to the United States Court of Appeals for the Second Circuit from the Opinion and Order on Motion to Quash entered April 10, 2026 (ECF #32), that quashed Applicants' 28 U.S.C. § 1782 document subpoena to respondent Balance Law PLLC dba Balance Law Firm.

Dated: New York, New York
            May 11, 2026

Amini LLC

/s/ Jeffrey Chubak
Jeffrey Chubak
131 West 35th Street
12th Floor
New York, NY 1001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Applicants

**ATTACHMENT 2**

APPEAL,ECF,MAGCONSENT

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:25-mc-00235-KHP

507 Summit LLC and KOA CapitaL L.P. v. Balance Law PLLC     Date Filed: 05/22/2025
Assigned to: Magistrate Judge Katharine H. Parker
Cause: M 77 Application to have subpoena issued to person living
in this district re: action in foreign cou

### Respondent

**Balance Law PLLC**            represented by    **Beixiao Robert Liu**
*dba Balance Law Firm*                                   Balance Law Firm
                                                        1 World Trade Ctr
                                                        Ste 8500
                                                        New York, NY 10007
                                                        212-741-8080
                                                        Fax: 631-490-4465
                                                        Email: robert.liu@balancelawfirm.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

### Applicant

**507 Summit LLC**            represented by    **Jeffrey Scott Chubak**
                                                         Amini LLC
                                                         131 West 35th Street
                                                         Ste 12th Floor
                                                         New York, NY 10001
                                                         212-490-4700
                                                         Email: jchubak@aminillc.com
                                                         *ATTORNEY TO BE NOTICED*

### Applicant

**KOA Capital L.P.**            represented by    **Jeffrey Scott Chubak**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/22/2025 | 1 | EX PARTE MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION for Discovery *Application for Order of Judicial Assistance under 28 U.S.C. § 1782.* (Filing Fee $ 52.00, Receipt Number ANYSDC-31125608)Document filed by 507 Summit LLC, KOA Capital L.P.. (Attachments: # 1 Exhibit 1 - Proposed Subpoena)(Chubak, Jeffrey) (Entered: 05/22/2025) |
| 05/22/2025 | 2 | MISCELLANEOUS COVER SHEET filed..(Chubak, Jeffrey) (Entered: 05/22/2025) |
| 05/22/2025 | 3 | STATEMENT OF RELATEDNESS re: that this action be filed as related to 23-mc-427. Document filed by 507 Summit LLC, KOA Capital L.P...(Chubak, Jeffrey) (Entered: 05/22/2025) |

| 05/22/2025 | 4 | MEMORANDUM OF LAW in Support re: 1 EX PARTE MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION for Discovery *Application for Order of Judicial Assistance under 28 U.S.C. § 1782.* (Filing Fee $ 52.00, Receipt Number ANYSDC-31125608) . Document filed by 507 Summit LLC, KOA Capital L.P...(Chubak, Jeffrey) (Entered: 05/22/2025) |
|---|---|---|
| 05/22/2025 | 5 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Lepercq Multi-Asset Fund SICAV FIS for 507 Summit LLC. Document filed by 507 Summit LLC..(Chubak, Jeffrey) (Entered: 05/22/2025) |
| 05/22/2025 | 6 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by KOA Capital L.P...(Chubak, Jeffrey) (Entered: 05/22/2025) |
| 05/23/2025 | | Case Designated ECF. (vba) (Entered: 05/23/2025) |
| 05/23/2025 | | MISCELLANEOUS CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Gregory H. Woods. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://https://nysd.uscourts.gov/rules/ecf-related-instructions. .(vba) (Entered: 05/23/2025) |
| 05/24/2025 | 7 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement) and Dispositive Motion (i.e., motion requiring a Report and Recommendation )All such motions. Referred to Magistrate Judge Katharine H. Parker. Motions referred to Katharine H. Parker. (Signed by Judge Gregory H. Woods on 5/24/2025) (sgz) (Entered: 05/27/2025) |
| 05/27/2025 | | Magistrate Judge Katharine H. Parker is designated to handle matters that may be referred in this case. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (tro) (Entered: 05/27/2025) |
| 05/30/2025 | 8 | ORDER SCHEDULING CASE MANAGEMENT CONFERENCE: This case has been referred to me for general pretrial supervision purposes (ECF #7). A Case Management Conference in this matter will be held on Wednesday, June 18, 2025 at 10:00 a.m. in Courtroom 17-D, United States Courthouse, 500 Pearl Street, New York, New York. Case Management Conference set for 6/18/2025 at 10:00 AM in Courtroom 17D, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Katharine H. Parker. (Signed by Magistrate Judge Katharine H. Parker on 5/30/2025) (rro) (Entered: 05/30/2025) |
| 06/13/2025 | 9 | AFFIDAVIT OF SERVICE of 1782 Motion Papers served on Balance Law PLLC on 06/12/2025. Service was accepted by Kayla Moore. Document filed by 507 Summit LLC, KOA Capital L.P...(Chubak, Jeffrey) (Entered: 06/13/2025) |
| 06/17/2025 | 10 | ORDER RESCHEDULING CASE MANAGEMENT CONFERENCE: Because Respondent has yet to make an appearance on the record, the case management conference scheduled for Wednesday, June 18, 2025 at 10:00 a.m. is hereby rescheduled to Tuesday, July 8, 2025 at 11:30 a.m. in Courtroom 17-D, United States Courthouse, 500 Pearl Street, New York, New York 10007. SO ORDERED. (Signed by Magistrate Judge Katharine H. Parker on 6/17/2025) (Case Management Conference set for 7/8/2025 at 11:30 AM in Courtroom 17D, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Katharine H. Parker.) (ar) (Entered: 06/17/2025) |

| 06/24/2025 | 11 | NOTICE OF APPEARANCE by Beixiao Robert Liu on behalf of Balance Law PLLC.. (Liu, Beixiao) (Entered: 06/24/2025) |
|---|---|---|
| 07/07/2025 | | NOTICE TO COUNSEL: REMINDER of the Case Management Conference set for 7/8/2025 at 11:30 AM in Courtroom 17D, 500 Pearl Street, New York, NY 10007 before Judge Katharine H. Parker re: 10 Order (ca) (Entered: 07/07/2025) |
| 07/08/2025 | 12 | Minute Entry for proceedings held before Magistrate Judge Katharine H. Parker - Courtroom 17D: Initial Pretrial Conference / Case Management / Discovery/ Scheduling / Status - held on 7/8/2025 : See Transcript for Details. A transcript of this proceeding is available by utilizing the attached order form. (ca) (Entered: 07/08/2025) |
| 07/08/2025 | 13 | POST-CONFERENCE ORDER: On July 8, 2025, the parties appeared before the undersigned for a case management conference. As discussed at the conference and set forth below: The parties shall meet and confer in an attempt to reach a resolution on the discovery sought in this matter. If the parties are able to reach a compromise, they shall file a letter informing the Court of said compromise by August 8, 2025. Alternatively, in the event the parties are unable to reach a compromise, Respondent shall file its response to the Application for an Order of Judicial Assistance Under 28 U.S.C. § 1782 by August 8, 2025. Applicants' reply is due by August 22, 2025. SO ORDERED. ( Replies due by 8/22/2025., Responses due by 8/8/2025) (Signed by Magistrate Judge Katharine H. Parker on 7/8/2025) (vfr) (Entered: 07/08/2025) |
| 07/10/2025 | 14 | PROPOSED CONSENT TO MAGISTRATE JUDGE DISPOSITION OF MOTION by 507 Summit LLC, KOA Capital L.P. re 1 EX PARTE MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION for Discovery *Application for Order of Judicial Assistance under 28 U.S.C. § 1782*. (Filing Fee $ 52.00, Receipt Number ANYSDC-31125608). Document filed by 507 Summit LLC, KOA Capital L.P...(Chubak, Jeffrey) (Entered: 07/10/2025) |
| 07/11/2025 | 15 | CONSENT TO JURISDICTION BY A US MAGISTRATE JUDGE by 507 Summit LLC, Balance Law PLLC, KOA Capital L.P.. (Case No Longer Referred to Magistrate Judge) CASE ASSIGNED to Magistrate Judge Katharine H. Parker. (Signed by Judge Gregory H. Woods on 7/11/2025) (sgz) (Entered: 07/11/2025) |
| 08/08/2025 | 16 | MEMORANDUM OF LAW in Opposition re: 1 EX PARTE MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION for Discovery *Application for Order of Judicial Assistance under 28 U.S.C. § 1782*. (Filing Fee $ 52.00, Receipt Number ANYSDC-31125608) . Document filed by Balance Law PLLC..(Liu, Beixiao) (Entered: 08/08/2025) |
| 08/08/2025 | 17 | DECLARATION of B. Robert Liu, Esq. in Opposition re: 1 EX PARTE MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION for Discovery *Application for Order of Judicial Assistance under 28 U.S.C. § 1782*. (Filing Fee $ 52.00, Receipt Number ANYSDC-31125608). Document filed by Balance Law PLLC. (Attachments: # 1 Exhibit A. Subpoena on 507 Summit LLC, # 2 Exhibit B. Respondent's Proposal).(Liu, Beixiao) (Entered: 08/08/2025) |
| 08/22/2025 | 18 | REPLY AFFIDAVIT of Jeffrey Chubak in Support re: 1 EX PARTE MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION for Discovery *Application for Order of Judicial Assistance under 28 U.S.C. § 1782*. (Filing Fee $ 52.00, Receipt Number ANYSDC-31125608). Document filed by 507 Summit LLC, KOA Capital L.P.. (Attachments: # 1 Exhibit 1 - Directions Order, # 2 Exhibit 2 - Qunar Cayman Islands Limited v. Athos Asia Event Driven Master Fund, # 3 Exhibit 3 - In re New Frontier Health Corporation, # 4 Exhibit 4 - In re 51job, Inc., # 5 Exhibit 5 - Phoenix Meridian Equity Limited v. Lyxor Asset Management, S.A., # 6 Exhibit 6 - 08/12/2025 Letter from Carey Olsen to Conyers Dill & Pearman re: Default of Discovery Obligations under Directions |

| | | |
|---|---|---|
| | | Order, # 7 Exhibit 7 - Emails with Respondent's Counsel).(Chubak, Jeffrey) (Entered: 08/22/2025) |
| 08/22/2025 | 19 | REPLY MEMORANDUM OF LAW in Support re: 1 EX PARTE MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION for Discovery *Application for Order of Judicial Assistance under 28 U.S.C. § 1782*. (Filing Fee $ 52.00, Receipt Number ANYSDC-31125608) . Document filed by 507 Summit LLC, KOA Capital L.P...(Chubak, Jeffrey) (Entered: 08/22/2025) |
| 12/14/2025 | 20 | LETTER addressed to Magistrate Judge Katharine H. Parker from Jeffrey Chubak dated 12/14/2025 re: Developments Underscoring Need to Obtain Requested Document Discovery from Respondent. Document filed by 507 Summit LLC, KOA Capital L.P... (Chubak, Jeffrey) (Entered: 12/14/2025) |
| 01/26/2026 | 21 | OPINION AND ORDER ON APPLICATION FOR DISCOVERY FOR USE IN A FOREIGN PROCEEDING re: 1 EX PARTE MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION for Discovery *Application for Order of Judicial Assistance under 28 U.S.C. § 1782*. For the above-stated reasons, the Petition is GRANTED in part and DENIED in part. Any motion to quash, modify or for other relief by Respondent shall be filed within thirty days of this Order. The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 1. SO ORDERED. (Filing Fee $ 52.00, Receipt Number ANYSDC-31125608) filed by 507 Summit LLC, KOA Capital L.P. (Signed by Magistrate Judge Katharine H. Parker on 1/26/2026) (mml) Transmission to Orders and Judgments Clerk for processing. (Entered: 01/27/2026) |
| 02/25/2026 | 22 | MOTION to Quash subpoena duces tecum . Document filed by Balance Law PLLC..(Liu, Beixiao) (Entered: 02/25/2026) |
| 02/25/2026 | 23 | DECLARATION of B. Robert Liu in Support re: 22 MOTION to Quash subpoena duces tecum .. Document filed by Balance Law PLLC. (Attachments: # 1 Exhibit 1-subpoena duces tecum, # 2 Exhibit 2-Confidentiality Order).(Liu, Beixiao) (Entered: 02/25/2026) |
| 02/25/2026 | 24 | MEMORANDUM OF LAW in Support re: 22 MOTION to Quash subpoena duces tecum . . Document filed by Balance Law PLLC..(Liu, Beixiao) (Entered: 02/25/2026) |
| 03/01/2026 | 25 | MEMORANDUM OF LAW in Opposition re: 22 MOTION to Quash subpoena duces tecum . . Document filed by 507 Summit LLC, KOA Capital L.P...(Chubak, Jeffrey) (Entered: 03/01/2026) |
| 03/03/2026 | 26 | REPLY AFFIRMATION of B. Robert Liu in Support re: 22 MOTION to Quash subpoena duces tecum .. Document filed by Balance Law PLLC. (Attachments: # 1 Exhibit A. Lorelei Corporate Records, # 2 Exhibit B. Lorelei's Withdrawal from the State Court Action).(Liu, Beixiao) (Entered: 03/03/2026) |
| 03/03/2026 | 27 | REPLY MEMORANDUM OF LAW in Support re: 22 MOTION to Quash subpoena duces tecum . . Document filed by Balance Law PLLC..(Liu, Beixiao) (Entered: 03/03/2026) |
| 03/05/2026 | 28 | LETTER MOTION for Oral Argument addressed to Magistrate Judge Katharine H. Parker from Jeffrey Chubak dated March 5, 2026. Document filed by 507 Summit LLC, KOA Capital L.P...(Chubak, Jeffrey) (Entered: 03/05/2026) |
| 03/09/2026 | 29 | LETTER MOTION for Leave to File Sur Reply addressed to Magistrate Judge Katharine H. Parker from Jeffrey Chubak dated 03/09/2026. Document filed by 507 Summit LLC, KOA Capital L.P.. (Attachments: # 1 Exhibit 1 - Sur Reply).(Chubak, Jeffrey) (Entered: 03/09/2026) |
| 03/12/2026 | 30 | LETTER RESPONSE to Motion addressed to Magistrate Judge Katharine H. Parker from B. Robert Liu, Esq. dated March 12, 2026 re: 29 LETTER MOTION for Leave to File Sur |

| | | |
|---|---|---|
| | | Reply addressed to Magistrate Judge Katharine H. Parker from Jeffrey Chubak dated 03/09/2026. . Document filed by Balance Law PLLC..(Liu, Beixiao) (Entered: 03/12/2026) |
| 03/13/2026 | 31 | ORDER denying 28 Letter Motion for Oral Argument; denying 29 Letter Motion for Leave to File Document. Those requests are DENIED. The issues which the Court must review are clear and the briefing is sufficient for the Courts consideration. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 28 and 29. SO ORDERED. (Signed by Magistrate Judge Katharine H. Parker on 3/12/26) (yv) (Entered: 03/13/2026) |
| 04/10/2026 | 32 | OPINION AND ORDER ON MOTION TO QUASH re: 22 MOTION to Quash subpoena duces tecum filed by Balance Law PLLC. For the reasons set forth above, the motion to quash is GRANTED. Within one week of this Opinion and Order, the parties shall submit a letter to the Court indicating whether there are any outstanding issues for the Court to address or whether, alternatively, this matter can be closed. The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 22 SO ORDERED. (Signed by Magistrate Judge Katharine H. Parker on 4/10/2026) (vfr) (Entered: 04/10/2026) |
| 04/16/2026 | 33 | JOINT LETTER addressed to Magistrate Judge Katharine H. Parker from Jeffrey Chubak dated 04/16/2026 re: Joint Letter Pursuant to ECF #32. Document filed by 507 Summit LLC, KOA Capital L.P...(Chubak, Jeffrey) (Entered: 04/16/2026) |
| 04/17/2026 | 34 | MEMO ENDORSEMENT on re: 33 Letter filed by 507 Summit LLC, KOA Capital L.P. ENDORSEMENT: APPLICATION GRANTED. (Signed by Magistrate Judge Katharine H. Parker on 4/17/2026) (vfr) (Entered: 04/17/2026) |
| 05/11/2026 | 35 | NOTICE OF APPEAL from 32 Memorandum & Opinion,,. Document filed by 507 Summit LLC, KOA Capital L.P.. Filing fee $ 605.00, receipt number ANYSDC-32831759. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit.. (Chubak, Jeffrey) (Entered: 05/11/2026) |
| 05/12/2026 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 35 Notice of Appeal,..(nd) (Entered: 05/12/2026) |
| 05/12/2026 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 35 Notice of Appeal, filed by 507 Summit LLC, KOA Capital L.P. were transmitted to the U.S. Court of Appeals..(nd) (Entered: 05/12/2026) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/12/2026 22:34:26 | | |
| **PACER Login:** | jeffreychubak | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-mc-00235-KHP |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**ATTACHMENT 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/26/2026
```

507 SUMMIT LLC, et al.,

                    Applicants,

      -against-

BALANCE LAW PLLC *d/b/a* BALANCE LAW FIRM.

                    Respondent.

**25-MC-235 (KHP)**

**OPINION AND ORDER ON APPLICATION FOR DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

507 Summit LLC and KOA Capital L.P. (collectively, the "Petitioners"), submitted an application requesting that the Court, pursuant to 28 U.S.C. § 1782, authorize Petitioners to issue subpoenas demanding that Balance Law PLLC d/b/a Balance Law Firm ("Respondent"), produce documents for use in an appraisal proceeding in the Grand Court of the Cayman Islands ("Cayman Court"), brought under Section 238 of the Cayman Islands Companies Act, to determine the fair value of Petitioners' Class A ordinary shares in China Index Holdings Limited ("CIH"). Respondent objects to the application. For the reasons set forth below, after consideration of the parties' submissions, Petitioner's application for discovery is GRANTED, but the scope of the discovery is modified as set forth below.

## BACKGROUND

### 1. The Parties

Petitioners are investment entities that were holders of Class A ordinary shares of CIH, a Cayman Islands exempted company. Petitioners acquired their interests through American Depositary Shares and later converted those interests into Class A ordinary shares. Petitioners

dissented from a take-private transaction involving CIH and thereafter commenced an appraisal proceeding in the Grand Court of the Cayman Islands pursuant to Section 238 of the Cayman Islands Companies Act, seeking a judicial determination of the fair value of their shares.

Respondent Balance Law PLLC ("Balance Law") is a New York law firm that represents Vincent Tianquan Mo ("Mo") and Richard Jiangong Dai ("Dai") – current and former controlling persons of Fang Holdings Limited ("FHL") – in a shareholder derivative action pending in the Supreme Court of the State of New York, New York County. Respondent is not a party to the Cayman appraisal proceeding.

### B. CIH, FHL, and the Take-Private Transaction

CIH was originally formed as a subsidiary of FHL and was spun off as a separate publicly traded company in 2019. Following the spin-off, FHL and CIH continued to maintain significant operational and governance overlap, including shared directors and management. At all relevant times, Mo exercised effective voting control over both FHL and CIH through his ownership interests and affiliated entities.

FHL retained a substantial equity position in CIH following the spin-off, including both Class A and Class B ordinary shares, with the latter carrying enhanced voting rights. As a result, FHL and Mo retained significant influence over CIH's strategic direction and any extraordinary corporate transactions involving the company. In November 2020, General Atlantic proposed acquiring CIH at a price materially higher than the price ultimately paid to minority shareholders. That proposal was not pursued. Instead, in August 2022, FHL proposed a take-private transaction at a substantially lower valuation. CIH's board subsequently formed a special committee to evaluate the proposal. In October 2022, FHL, Mo, and General Atlantic

entered into a consortium agreement pursuant to which the consortium renewed the take-private proposal at a price of $0.84 per share. After further negotiations, the consortium increased the consideration to $1.00 per share, which it characterized as its best and final offer. The special committee approved the transaction on December 22, 2022, and the CIH board approved the merger the same day. The transaction closed in April 2023.

Petitioners dissented from the merger and invoked their appraisal rights under Cayman law.

### D. Subsequent Litigation in the Cayman Islands and New York

Petitioners commenced an appraisal proceeding in the Grand Court of the Cayman Islands seeking a judicial determination of the fair value of their CIH shares as of the effective date of the merger. Under Cayman law, appraisal proceedings are largely expert-driven. *See generally In the matter of Homeinns Hotel Group* (unreported Aug. 12, 2016) (explaining that the Cayman Court is not a specialist valuation body and must therefore rely on expert evidence from experienced valuers who require access to relevant historical data, documents, and company information to assist them in determining fair value). Discovery in the Cayman appraisal proceeding is ongoing, and CIH is expected to produce documents to Petitioners pursuant to the Cayman Court's procedures. The Cayman Court cannot compel a non-party to provide evidence for an appraisal proceeding but permits the submission of evidence obtained through foreign judicial assistance, including evidence obtained pursuant to 28 U.S.C. § 1782. *See In re 507 Summit*, No. 23 Misc. 427 (KHP), 2024 WL 81842, at *2 (S.D.N.Y. Jan. 8, 2024) (Parker J.,) (granting Petitioner's Section 1782 application for discovery in the same foreign proceeding at issue here). "In assessing the fair value of the shares, the Cayman Court will

evaluate the fairness of the process that lead to the board's approval of the transaction and may consider objective valuations of the shares and the process by which the special committee and board concluded that the price of $1 per share was appropriate." *Id.*, at *1.

Separately, a shareholder derivative action is pending in New York Supreme Court against Mo, Dai, and affiliated entities, asserting claims for breach of fiduciary duty and related misconduct arising out of several transactions involving FHL and CIH. *See Oasis Inv.'s II Master Fund Ltd. V. Mo et al*., Sup. Ct., Com. Div., No. 652607/2023. Those transactions include the CIH spin-off, FHL's purchase of CIH shares from affiliated entities, FHL's delisting from the New York Stock Exchange, insider share acquisitions following that delisting, and the CIH take-private transaction.

Respondent represents the defendants in the New York action. In that proceeding, the defendants have produced more than 300,000 pages of documents pursuant to state-court discovery orders. As part of discovery disputes in the New York action, Respondent produced a chart identifying categories of documents responsive to issues raised by the derivative plaintiffs. (NYSECF No. 380) The court in the New York action has authorized non-party discovery directed to minority shareholders, including Petitioners, concerning their understanding of the challenged transactions. (ECF No. 16 ("Resp. Mem."), at 2) Pursuant to that authorization, Respondent served a subpoena on Petitioners seeking documents and communications relating to their investments and litigation activities specifically for the New York action. (*Id.*) Shortly thereafter, Petitioners filed the instant application. (*Id.*)

## THE PROPOSED SUBPOENAS

Petitioners filed the present application under 28 U.S.C. § 1782 seeking authorization to subpoena Respondent for documents identified in the discovery chart produced in the New York derivative action.  Petitioners assert that the requested documents are relevant to determining the fair value of CIH shares in the Cayman appraisal proceeding, including evidence bearing on valuation, transaction process, and alleged suppression of CIH's market price.

The requested discovery is not framed as traditional document requests drafted specifically for the Cayman proceeding.  Instead, Petitioners seek production of a defined universe of documents previously produced by FHL and its affiliates through Respondent in connection with discovery in the New York shareholder derivative action.

The document subpoena on Respondent seeks production of all documents identified by Bates number in the discovery chart produced by Balance Law in the New York shareholder derivative action and filed as NYSCEF No. 380.  These documents include:

- Documents concerning the impetus for the spin-off of CIH;
- Documents concerning the selection of independent directors or committee members for the CIH spin-off;
- Documents concerning the selection of independent directors or committee members for the approval of CIH buybacks;
- Documents concerning the decision for Next Decade and Media Partner to enter the 2019 CIH Share Purchase Agreement with Fang;
- Documents concerning the rationale for the 2019 CIH Share Purchase Agreement's $5.99 CIH per share option price;
- Documents concerning any alleged suppression, manipulation, or distortion of CIH's market price prior to the merger;
- Documents concerning the selection of the China Enterprise Appraisals ("CEA") and the evaluation of other firms mentioned in email correspondence for the valuation of the 2019 CIH Share Purchase Agreement;
- Documents concerning CEA's CIH value conclusion;
- Documents concerning Fang's decision to drive up the open market price of CIH in the lead up to the CIH Share Purchase Agreement option exercise in December 2019 and June 2020 through a series of open market purchases;

- Documents concerning Fang's decision to exercise its CIH Share Purchase Agreement option in both December 2019 and June 2020;
- Documents concerning the decision not to file Fang's annual SEC filings for the years 2020 onward;
- Documents concerning the decision not to file SEC filing extension requests;
- Documents concerning Ace's and True Knight's purchases of Fang and CIH interest from eleven sellers through over 20 transactions in June 2021 through May 2022 while Fang was no longer making its annual securities filings;
- Documents concerning the timing and purchase price amounts for Ace's and True Knight's purchases of Fang's and CIH interest from eleven sellers through over 20 transactions in June 2021 through May 2022 while Fang was no longer making its annual securities filing;
- Documents concerning the rationale for the CIH take private transaction;
- Documents concerning the selection of Roth Capital Partners to provide a valuation of CIH for the CIH take private;
- Documents concerning hiring Malone Bailey or interviews of other audit firms despite documents describing months of efforts to secure an auditor;
- Communications between the independent directors/committee members who approved the CIH spin-off and the 2019 CIH Share Purchase Agreement;
- Communications with Mo regarding why he wanted to sell "around $50-$100 million of [his] CIH shares" to Fang before September 30, 2019 (3 months before Fang entered the 2019 CIH Share Purchase Agreement), because of a "window issue";
- Communications with Media Partner and Next Decade regarding entering the 2019 Share Purchase Agreement;
- Communications with Media Partner and Next Decade regarding the $5.99 CIH per share option price, despite documents referencing negotiations with the "sellers" regarding the $5.99 CIH share price;
- Communications from Fang to CEA regarding CEA's value conclusion for CIH;
- Communications with any other valuation firms for CIH despite emails purporting that Fang "contacted with three well-known appraisal firms";
- Communications with Roth Capital Partners regarding report drafts or the valuation of CIH for the take private transaction;
- Documents concerning communications with members of the buyer group consortium and rollover shareholders regarding the CIH take private transaction or CIH's value;
- Communications with any of the eleven sellers relating to the over 20 transactions whereby they sold their Fang and CIH interests to Mo and Dai and their respective entities, Ace and True Knight, from June 2021 through May 2022 while Fang was no longer making its annual securities filings; and
- Communications with outside auditors regarding their hiring despite documents describing months of efforts to secure an auditor.

In addition to the instant application, Respondent has noted that Petitioners have applied for

discovery under Section 1782 in several other Districts seeking to obtain evidence for the

appraisal proceeding in Cayman.  All of Petitioners' applications across these Districts have been granted or were voluntarily dismissed.  *See In re 507 Summit*, 2024 WL 81842, at *3 (authorizing Petitioners to issue the proposed subpoena in full); *507 Summit v. Hayes*, No. 24 Civ. 10260 (MAS) (RLS), 2024 WL 6847468, at *1 (D.N.J. Nov. 22, 2024) (granting Petitioners' application to take deposition of foreign respondent Jie Jiao Hayes at Dkt. No. 6); *507 Summit LLC v. Kroll LLC et al.*, 23 Misc. 43 (D. Del. 2023) (granting Petitioners' Section 1782 application for document production and depositions at Dkt. No. 9); *In re Application of 507 Summit LLC, et al.*, 23 Misc. 40 (MTL) (D. Ariz. 2023) (voluntarily dismissing the application at Dkt. No. 13); *In re Application of 507 Summit LLC*, No. 23 Misc. 80243 (DMR) (N. D. Cal 2023) (voluntarily dismissing the application at Dkt. No. 28).

Respondent describes the scope of the requested discovery differently.  Specifically, Respondent says that the chart encompasses a substantial portion of the more than 300,000 pages of documents produced in the New York derivative action, many of which relate to transactions and events that postdate the CIH take-private transaction or concern FHL conduct unrelated to CIH's fair value as of the merger date.  Respondent asserts that the chart includes documents that are not directly at issue in the Cayman appraisal proceeding.  Respondent further represents that discovery in the Cayman appraisal proceeding is ongoing and that Petitioners are scheduled to receive document production directly from CIH pursuant to the Cayman Court's procedures.  Consequently, to the extent documents responsive to valuation issues exist, Respondent avers those materials will either be produced by CIH in the appraisal proceeding or are duplicative of documents already available to Petitioners through other means.

Following a case management conference in this matter, the parties discussed a potential compromise.  Respondent proposed producing documents limited to the CIH take-private transaction, including materials relating to the merger agreement, the $1.00 per share consideration, and the filing of the merger with Cayman authorities, subject to appropriate confidentiality protections.  Respondent proposed this production on the condition that Petitioners provide reciprocal discovery in response to a non-party subpoena served on them in the New York action.  Petitioners declined that proposal and maintained their request for production of all documents identified in the chart, without limitation.  As a result, Respondent now asserts that the instant application is retaliatory in nature and indicates forum shopping to obtain evidence that is unavailable in Cayman.

Ultimately, the discovery sought in this application consists of a discrete but substantial body of documents previously produced in domestic litigation, the relevance and proportionality to the Cayman appraisal proceeding are disputed by the parties.

### LEGAL STANDARD

Section 1782 empowers a United States district court to order any person residing within its jurisdiction to provide discovery for use in a foreign proceeding pursuant to the application of an interested party.  28 U.S.C. § 1782(a).  Applicants for discovery under Section 1782 must meet three statutory requirements: "(1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal', and (3) the applicant must be either a foreign tribunal or an 'interested person.'"  *In re Accent Delight Int'l Ltd.*, 869 F.3d

121, 128 (2d Cir. 2017) (citing *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798

F.3d 113, 117 (2d Cir. 2015)).

Provided the statutory requirements for discovery are met, the Court must then

determine, in its discretion, whether the discovery should be permitted in light of the four so-

called *Intel* factors.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  These

factors are as follows:

- Whether the person from whom discovery is sought is a participant in the foreign
  proceeding;
- The nature and character of the foreign tribunal and proceedings before it, as well as
  the tribunal's receptivity to U.S. federal-court judicial assistance;
- Whether the discovery request is an attempt to circumvent foreign proof-gathering
  restrictions or policies of a foreign country or the United States; and
- Whether the discovery is unduly intrusive or burdensome.

*Id.*, at 264-65.  When evaluating these factors, the Court must be mindful of the goals of Section

1782:  to provide efficient means of assistance to participants in international litigation and to

encourage foreign countries by example to provide similar means of assistance to U.S. courts.

*Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

### DISCUSSION

Respondent concedes that it resides in or can be found in the Southern District of New

York and that Petitioners are "interested" in the Cayman proceeding within the meaning of 28

U.S.C. § 1782(a),  (Resp. Mem., at 4)  but argues the second statutory requirement is not met.

(*Id.*)  I address the remaining statutory and discretionary factors below.

1. **Statutory Factor**

Respondent argues that Petitioners have not shown that the requested documents are

"for use" in the Civil Action because many, if not all the documents identified and being used in

the New York derivative action are irrelevant to share valuation, thus outside the scope of the Cayman litigation.

Satisfaction of the "for use" element requires that there be a foreign proceeding[1] and that the proceeding be adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). Assuming this threshold is met, a petitioner can demonstrate that discovery is for "use" in a foreign proceeding by showing that it can employ the information sought "with some advantage" in the foreign proceeding. *Accent Delight Int'l Ltd.*, 869 F.3d at 131-32. The information need be only "minimally relevant" and there must be a "procedural mechanism by which petitioner may inject the discovery it seeks" into the foreign proceeding. *In re Ativos Especiais II – Fundo de Investimento em Direitos Creditorios – NP*, No. 24 Misc. 119, 2024 WL 4169550, at *4 (S.D.N.Y. Sept. 12, 2024) (cleaned up); *Certain Funds*, 798 F.2d at 120-21.

Whether a foreign proceeding is adjudicative in nature must be determined on a case-by-case basis with careful consideration of whether the information sought through the Section 1782 application can be used to some advantage in the foreign proceeding. *In re YS GM Marfin II LLC*, 20 Misc. 182, 2022 WL 624291, *5; *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, No. 20 Misc. 188 (PAE), 2020 WL 2793055, at *4 (S.D.N.Y. May 29, 2020); *In re Accent Delight Int'l Ltd.*, 869 F.3d at 132. When the foreign tribunal engages in factfinding then it is adjudicative. *Union Fenosa Gas, S.A.*, 2020 WL 2793055, *5; *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 25 F.4th 99 (2d Cir. 2022) (no categorical bar to obtaining Section 1782 relief in connection with post-judgment proceeding).

---

[1] There is no articulated dispute that there is, in fact, a foreign proceeding associated with the instant matter.

Here, Respondent does not – nor can it – dispute that the pending Civil Action *is* adjudicative in nature because the Cayman Court is tasked with determining the fair value of Petitioners' CIH shares and ruling on the issue.

The term "for use" is afforded "a broad interpretation," *Deposit Ins. Agency v. Leontiev*, No 17 Misc. 414 (GBD) (SN) 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018).  Intrinsically, the "for use" requirement may be satisfied so long as the materials sought are "to be used at some stage of a foreign proceeding."  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017).

Respondent's argument, as noted, hinges on the premise that not all the documents requested would be relevant to a share value determination by the Cayman Court.  However, the alleged overbreadth of the Subpoenas is better addressed when considering the fourth *Intel* factor, particularly when, as here, Respondent concedes that at least some of the documents sought are relevant to a share value determination to be made by the Cayman Court. *In re Kingstown Partners Master Ltd.*, No. 21 Misc. 691 (LTS), 2022 WL 1081333, at *5 (S.D.N.Y. Apr. 8, 2022) (finding that the "for use" requirement is satisfied "so long as the materials sought are 'to be used at some stage of a foreign proceeding.'") (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017).  Thus, because some of the documents sought are relevant to share value – the core of the Cayman Court action – the subpoena meets the "for use" prong of the statute.

Petitioners have therefore met the statutory preconditions for their discovery motion. The Court now turns to its application of the discretionary *Intel* factors and concludes, for the reasons that follow, that those factors weigh in favor of granting Petitioners' motion, with certain limitations.

**2.** *Intel* **Factors**

Respondent asserts that the *Intel* factors caution against granting the application because Petitioners' application is overbroad, evinces a retaliatory attempt to circumvent foreign proof-gathering restrictions, and is overly intrusive and burdensome.

### A.  Whether Respondent is a Participant in the Foreign Proceeding

When the party from whom information is sought is not a participant in the foreign proceeding, then the party may be outside of the foreign tribunal's reach and unobtainable absent Section 1782 aid. *Intel*, 542 U.S. at 264.  Thus, this factor evaluates whether the information sought is within the jurisdiction of the foreign court.  *In re Postalis*, 2018 WL 6725406, *5.  Here, Respondent is not a participant in the pending foreign proceeding, and it is unclear whether they would be participants in any future action.  Also, Petitioner has not articulated any basis for a court in the Cayman Islands to have jurisdiction over the Respondent. Thus, this factor militates in favor of discovery.

### B.  The Nature and Character of the Foreign Tribunal, the, Proceedings Before It, and the Tribunal's Receptivity to U.S. Federal-Court Judicial Assistance

The second *Intel* factor – the nature of the foreign proceedings and receptivity of the foreign tribunal to federal-court assistance – requires courts to consider "(1) whether United States assistance would offend the foreign country ... and (2) whether the material sought is admissible in the foreign tribunal." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. 19 Misc. 88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006).  "The Second Circuit has instructed this Court to consider 'only authoritative proof' in considering these factors." *Id.* at *6 (quoting *In re Application of Euromepa S.A.*, 51 F.3d 1095, 1099-1100 (2d Cir.1995)).  "[M]ost courts frame the second *Intel* factor's inquiry as focused on 'the

receptivity to U.S. federal-court judicial assistance' 'more generally,' not whether the specific court would admit each specific piece of evidence sought, since such an analysis would involve domestic courts in narrow questions of foreign law better suited to their foreign counterparts." *In re Kingstown Partner Master Ltd*, 2022 WL 1081333, at *5 (quoting *In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016)).

Respondent does not dispute that courts in the Cayman Islands are typically receptive to considering discovery sought and obtained in the United States through Section 1782.  Instead, it argues that Cayman Courts "prefer their own procedures in appraisals, which limit discovery to expert exchanges.  (*Id.* (citing *In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006)).  Respondent's reliance on *In re Application of Microsoft Corp* is inapposite for the purposes of adjudicating this factor.  The case was cited for the premise that the Court denied the Section 1782 application because it found that Microsoft's discovery request was "not objectively necessary but rather an attempt to circumvent the established rules." This argument goes to the third *Intel* factor rather than the second.  Respondent further argues, without support, that Cayman Courts are receptive to "expert exchanges" and "targeted aid, not broad production."  However, evidence that depends on equivocal readings of foreign law or foreign policy is ordinarily inadequate to justify the denial of discovery in a Section 1782 action.  *See e.g., In re Application of Grupo Qumma, S.A.*, No. M8-85 (DC), 2005 WL 937486, at * 3 (S.D.N.Y. Apr. 22, 2005) (authorizing discovery under Section 1782 despite disagreement over whether the foreign tribunal would accept the evidence).  In circumstances like this, the Second Circuit has made clear that district courts should generally resolve any doubt in favor of allowing the requested discovery to proceed.  *See Euromepa,* 51 F.3d at 1101 (2d Cir.1995) ("[I]t

is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief sought."); *In re Grupo Qumma,* 2005 WL 937486, at *2-3 (approving the § 1782 discovery request and leaving questions of admissibility to the Mexican court, notwithstanding the parties' submission of dueling expert declarations addressing the significance of prior Mexican judicial rulings and the requirements of Mexican evidentiary law). Consequently, the second *Intel* factor weighs in favor of granting Petitioners' motion.

### C.  Whether the Discovery Request is an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Policies of a Foreign Country or the United States

"The third discretionary factor aims to protect against abuse of § 1782 as a vehicle to end-run foreign proof-gathering restrictions or other foreign policies." *In re Application of Gemeinshcaftspraxis*, 2006 WL 3844464, at *7 (citing *Intel,* 524 U.S. at 265)  Respondents argue that the third *Intel* factor is not met because the instant application is yet another attempt by Petitioners to obtain evidence unavailable in the Caymans.  However, Respondent points to no proof-gathering restriction under Cayman law and instead references, without support, the Cayman Court's preference for limited discovery and a focus on experts in appraisal proceedings.  This is insufficient.  The law is clear that it is "[o]nly where materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated."  *In re Tiberius Group*, 2020 WL 1140784, at *4 (citing *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247 (2d Cir. 2019)). Though Respondent has made the argument that because it is a law firm, it is entitled to additional scrutiny under Section 1782, it does not make the argument that any of the documents Petitioners seek are privileged or otherwise undiscoverable.  (Resp. Mem., at 8)  Moreover, a mere preference by the Cayman Court for

expert discovery in appraisal proceedings does not mean that the Cayman Court prohibits the obtaining of fact information such as the kind sought here upon which an expert might rely. *See In re Qunar Cayman Is. Ltd.,* at *1 (expert testimony and methodology based upon review of documentary evidence was dispositive in determining fair value of shares in an analogous appraisal proceeding under Section 238).   Undoubtedly, Petitioners' application represents an effort to obtain discovery that they could not secure through foreign proceedings.  Indeed, the Cayman Court, does not have the authority to order nonparties – like respondent – outside of its jurisdiction to produce evidence.  *See In re 507 Summit*, 2024 WL 81842, at *2.  That circumstance, however, does not render the application an "impermissible" use of Section 1782.  On the contrary, facilitating access to evidence unavailable or unobtainable by a foreign court is exactly the kind of support the statute was intended to provide.   Respondent need not argue that Petitioners are attempting to circumvent proof-gathering restrictions simply because they have applied for discovery pursuant to Section 1782 against several parties in several Districts.  *See In re Application of Imanagement Serv., Ltd.*, No. M5-89 (FB), 2005 WL 1959702, at *5 (E.D.N.Y. Aug. 16, 2005) (granting Section 1782 application where "resort to § 1782 may be the only avenue by which [the requesting party] can obtain the discovery it seeks.").  It is clearly established that the Cayman Court permits some document discovery in appraisal proceedings.  *E.g. Lyxor Asset Mgm't S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553;  *In re Nord Anglia Education, Inc.* (Unreported, March 17, 2020).  And, Respondent has not articulated what ulterior motive, Petitioners have for making this request other than the allegation that Petitioners would only comply with the New York subpoena if Respondent capitulates to the instant application.  (Resp. Mem., at 3, 4)  Absent any other indication of bad

faith on Petitioners' part, the request for Section 1782 assistance in other Districts cannot be deemed a negative discretionary factor.  It is at most a neutral consideration.

### D.  Whether the Discovery is Unduly Intrusive or Burdensome

The final *Intel* factor requires a court to consider "[w]hether the subpoena contains unduly intrusive or burdensome requests."  *In re Warren*, No. 20 MISC. 208 (PGG), 2020 WL 6162214, at *5 (S.D.N.Y. Oct. 21, 2020) (citing *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006) and *Intel*, 542 U.S. at 264-65).  When evaluating this factor, the Court is guided by the standards of Rule 26 of the Federal Rules of Civil Procedure.  *Mees*, 793 F.3d at 302.

Respondents argue that the discovery sought is overbroad insofar as it seeks information not relevant to the pending Cayman action and that it constitutes an improper fishing expedition.

Rule 26(b)(1) provides that a party may obtain discovery of information "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). Factors relevant to proportionality are the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

While the proposed subpoenas are broad and seek more information than required to evaluate the price of CIH shares, the Court finds that the New York derivative action and the Cayman action are linked and that many of the documents produced in the New York suit bears directly on CIH equity valuation.   This is particularly true to the extent Petitioners seek information in the chart that explicitly discuss CIH value or deliberate attempts to drive share

price up or down.  On the other hand, fiduciary duty claims rather than information related to share valuation or suppression of CIH's market price are outside the scope of what is relevant for an appraisal proceeding.

Thus, the Court finds, that this *Intel* factor is met for some of the information sought and that it can and should narrow the discovery sought to be consistent with the purposes of Section 1782.[2]  Namely, the Court finds the following categories of information to be relevant to the CIH share valuation and proportional to the needs of the case:

- Documents concerning the rationale for the 2019 CIH Share Purchase Agreement's $5.99 CIH per share option price;
- Documents concerning any alleged suppression, manipulation, or distortion of CIH's market price prior to the merger;
- Documents concerning the selection of independent directors or committee members for the CIH spin-off;
- Documents concerning the selection of the China Enterprise Appraisals ("CEA") and the evaluation of other firms mentioned in email correspondence for the valuation of the 2019 CIH Share Purchase Agreement;
- Documents concerning CEA's CIH value conclusion;
- Documents concerning Fang's decision to drive up the open market price of CIH in the lead up to the CIH Share Purchase Agreement option exercise in December 2019 and June 2020 through a series of open market purchases;
- Documents concerning the rationale for the CIH take private transaction;
- Documents concerning the selection of Roth Capital Partners to provide a valuation of CIH for the CIH take private;
- Documents concerning hiring Malone Bailey or interviews of other audit firms despite documents describing months of efforts to secure an auditor;
- Communications with Mo regarding why he wanted to sell "around $50-$100 million of [his] CIH shares" to Fang before September 30, 2019 (3 months before Fang entered the 2019 CIH Share Purchase Agreement), because of a "window issue";
- Communications with Media Partner and Next Decade regarding entering the 2019 Share Purchase Agreement;
- Communications with Media Partner and Next Decade regarding the $5.99 CIH per share option price, despite documents referencing negotiations with the "sellers" regarding the $5.99 CIH share price;
- Communications from Fang to CEA regarding CEA's value conclusion for CIH;

---

[2] Because the Court will narrow the discovery requests, it does not address Respondents' argument that the discovery is retaliatory, as that argument goes principally to the burden of the discovery sought.

- Communications with any other valuation firms for CIH despite emails purporting that Fang "contacted with three well-known appraisal firms";
- Communications with Roth Capital Partners regarding report drafts or the valuation of CIH for the take private transaction;
- Communications between the independent directors/committee members who approved the CIH spin-off and the 2019 CIH Share Purchase Agreement;
- Documents concerning communications with members of the buyer group consortium and rollover shareholders regarding the CIH take private transaction or CIH's value;

The Court finds the following categories to be of little or no relevance to the CIH valuation because they seek information concerning corporate governance processes unrelated to the approval of the spin-off transaction, regulatory compliance issues, or unrelated third-party transactions that do not bear on the determination of CIH's fair value as of the valuation date.  They are, therefore, not relevant to Petitioners' claims and are disproportionate to the needs of the case:

- Documents concerning the selection of independent directors or committee members for the approval of CIH buybacks;
- Documents concerning the decision for Next Decade and Media Partner to enter the 2019 CIH Share Purchase Agreement with Fang;
- Documents concerning Fang's decision to exercise its CIH Share Purchase Agreement option in both December 2019 and June 2020;
- Documents concerning the decision not to file Fang's annual SEC filings for the years 2020 onward;
- Documents concerning the decision not to file SEC filing extension requests;
- Documents concerning Ace's and True Knight's purchases of Fang and CIH interest from eleven sellers through over 20 transactions in June 2021 through May 2022 while Fang was no longer making its annual securities filings;
- Documents concerning the timing and purchase price amounts for Ace's and True Knight's purchases of Fang's and CIH interest from eleven sellers through over 20 transactions in June 2021 through May 2022 while Fang was no longer making its annual securities filing;
- Communications with any of the eleven sellers relating to the over 20 transactions whereby they sold their Fang and CIH interests to Mo and Dai and their respective entities, Ace and True Knight, from June 2021 through May 2022 while Fang was no longer making its annual securities filings; and
- Communications with outside auditors regarding their hiring despite documents describing months of efforts to secure an auditor.

### 3. Costs

A district court may determine how the costs arising from a non-party's compliance with a subpoena issued pursuant to Section 1782 are to be allocated. "In evaluating the allocation of costs under Section 1782, the Court can look to cases considering similar issues under Fed. R. Civ. P. 45." *In re T-Sys. Scheiz AG*, No. 20 Misc. 308 (GHW), 2020 WL 7384007, at *2 (S.D.N.Y. Dec. 16, 2020).  Determining each party's share of the cost of compliance in such circumstances "turns on three factors: (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." *Id*. (citing *In re World Trade Ctr. Disaster Site Litig.*, No. 21 Misc. 100 (AKH), 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010)).

Here, Respondent had no articulable role in the take-private transaction and there is no discernible evidence that it has any direct financial interest in the outcome of the Cayman proceeding.  While, Respondent has expressed that the costs of producing discovery would present an "undue burden," and that costs should shift entirely to Petitioners, Respondent does not represent whether or not it can readily "bear the costs" of production.  ((Resp. Mem., at 8); *Id.*  Finally, the outcome of the appraisal proceeding is not of significant public importance.  Accordingly, the Court determines that, in light of the specific circumstances presented here, requiring Petitioners to assume fifty percent of the costs incurred by Respondent in the production of documents requested appropriately reconciles the broad and permissive discovery regimes embodied by Section 1782 and Rule 26 with the imperative of shielding non-parties from excessive burden, financial or otherwise.  *See In re Kingstown Partners Master Ltd.*,

2022 WL 1081333, at *7 (granting 1782 application and ordering the petitioner to assume half the costs incurred by the respondent in production).

## CONCLUSION

For the above-stated reasons, the Petition is GRANTED in part and DENIED in part. Any motion to quash, modify or for other relief by Respondent shall be filed within thirty days of this Order.

**The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 1.**

**SO ORDERED.**

Dated:     January 26, 2026
           New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

**ATTACHMENT 4**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 507 SUMMIT LLC, et al.,<br><br>                              Applicants,<br><br>               -against-<br><br><br>BALANCE LAW PLLC *d/b/a* BALANCE LAW FIRM.<br><br>                              Respondent. | **USDC SDNY**<br>**DOCUMENT**<br>**ELECTRONICALLY  FILED**<br>**DOC #:**_____<br>**DATE FILED:** __4/10/2026__<br><br>**25-MC-235 (KHP)**<br><br>**OPINION AND ORDER**<br>**ON**<br>**MOTION TO QUASH** |

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

507 Summit LLC and KOA Capital L.P. (collectively, the "Petitioners"), submitted an application requesting that the Court, pursuant to 28 U.S.C. § 1782, authorize Petitioners to issue subpoenas demanding that Balance Law PLLC d/b/a Balance Law Firm ("Respondent"), produce documents for use in an appraisal proceeding in the Grand Court of the Cayman Islands ("Cayman Court"), brought under Section 238 of the Cayman Islands Companies Act, to determine the fair value of Petitioners' Class A ordinary shares in China Index Holdings Limited ("CIH").  On January 26, 2026, the Petition was granted, but limited the scope of the documents Petitioner sought and permitted further motion practice on any objections to the subpoena issued.  (ECF No. 21)  The subpoena served seeks documents obtained by Respondent from its non-U.S. clients that were produced in a New York state court action in which its non-U.S. clients were defendants, pursuant to a protective order issued by the state court.   The protective order stipulates that the documents were to be used solely for purposes of the state court action.

1

On February 25, 2026, Respondent moved to quash the subpoena Plaintiff issued in response to the Court's Order based on an issue not fully addressed in the Court's prior Opinion and Order; that its, whether it is contrary to public policy and overly burdensome to require Respondent – a law firm – to produce the documents in light of how and why they were obtained by Respondent and the circumstances under which they were produced in the state court action.   For the reasons that follow, Respondent's motion to quash is GRANTED.

### DISCUSSION

1. **Legal Standard**

Generally, after a Section 1782 petition is granted, the Court may address disputes about the scope of the subpoena issued under the Federal Rules of Civil Procedure ("Rule(s)"). *See In re SBK ART LLC*, 168 F.4th 68, 72, 83 (2d Cir. 2026) (finding that after the District Court fashioned an order "to meet the twin aims of Section 1782" and granted the petition, the respondent law firm's concerns were "properly addressed under ordinary discovery rules."); *see also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) ("The section 1782 screen — the judicial inquiry that the statute requires — is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court.  Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including Rule 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out."). Thus, the Court looks to Federal Rule of Civil Procedure when evaluating a motion to quash or compel compliance with a subpoena issued pursuant to Section 1782.  *See, e.g., In re*

*Application of Gorsoan Ltd. and Gazprombank OJSC*, No. 13 Misc. 397 (PGG), 2014 WL 7232262, at *5, *10 (S.D.N.Y. Dec. 10, 2014).

A few general concepts are pertinent here.  Federal Rule of Civil Procedure 45 provides that the party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  It also provides that the court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3).

Rule 26(b) cabins discovery to non-privileged information that is both relevant and proportional to the case.  Fed. R. Civ. P. 26(b)(1).  "[R]elevance is an extremely broad concept for purposes of discovery." *Edmar Fin. Co. v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024) (citing *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019) (Parker, M.J.)). "Information is 'relevant' if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401); *see MacCartney v. O'Dell*, 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2 1357, 1367 (2d Cir. 1991)) (discovery permitted "if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action").

Proportionality "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "When

3

evaluating undue burden, the court considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed." *Blake Marine Grp. LLC v. Frenkel & Co.*, No. 18 Civ. 10759 (AT) (KHP), 2019 WL 1723567, at *1 (S.D.N.Y. Apr. 18, 2019). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Pearlstein*, 332 F.R.D. at 121 (citing *Villella v. Chemical & Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2018 WL 2958361, at *8 (S.D.N.Y. June 13, 2018)).

Motions to quash are "'entrusted to the sound discretion of the . . . court.'" *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 260 (S.D.N.Y. 2024). The movant carries the burden of showing that a subpoena imposes an undue burden on a witness. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009). To make this showing, a party must set forth "the manner and extent of the burden and the probable negative consequences of insisting on compliance.... [I]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) and *Croom v. Western Conn. State Univ.*, 218 F.R.D. 15, 17 (D. Conn. 2002)).

## 2. Analysis

In the context of a Section 1782 application, the Second Circuit has held that when the target of the Section 1782 discovery is a law firm the court should give heightened scrutiny to the request because, not only may the request implicate attorney-client privilege, but it also may chill open communications between foreign clients and their U.S. lawyers and/or lead to

4

other downstream consequences of subjecting a non-party law firm to discovery obligations in a foreign proceeding.  *See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018).

Courts have permitted Section 1782 discovery to be obtained from law firm respondents when the discovery sought involved non-privileged documents or documents over which the privilege was waived.  *See, e.g.*, *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (stating any privilege pertaining to documents were sent by the client to Davis Polk to secure the firm's legal advice, was waived when the client voluntarily authorized Davis Polk to send the documents to the SEC and they had been publicly disclosed); see also *In re Lifetrade Litig.*, No. 17 Civ. 2987 (JPO) (KHP), 2022 WL 3644357, at *2 (S.D.N.Y. Aug. 24, 2022) ("[T]he privilege is waived if the holder of the privilege discloses or consents to the disclosure of the privileged communication to a third party.") (citing *Kleeberg v. Eber*, 2019 WL 2085412, at *7 (S.D.N.Y. May 13, 2019)).

Given that Respondent's client sent the documents at issue for "the purpose of being assessed by Balance Law for (among other things) discoverability and then produced to the plaintiff in the State Court Action," (ECF No. 24, at 9) it may seem, at first glance, that any protection that may have been afforded those documents was abrogated when they were produced in the state court derivative action and that there is limited burden to producing them here.  However, unlike in cases where law firms were required to turn over documents that had been produced or made public, in this case, the documents, while not privileged, were produced pursuant to a protective order in litigation.

5

In *Kiobel*, the Second Circuit held that the district court abused its discretion in granting the Section 1782 petition because the discovery sought would have undermined a preexisting confidentiality order governing discovery produced in prior U.S. litigation and because the documents were in counsel's possession solely by virtue of that prior representation. *Kiobel*, 895 F.3d at 246-48. The Second Circuit's analysis turned centrally on the concern that Section 1782 should not be used as a workaround to evade protective-order restrictions and thereby discourage foreign clients from producing documents to U.S. counsel even under court-ordered confidentiality protections. *Id.; see also In re SBK ART LLC*, 168 F.4th at 81-82 (finding that presence of the confidentiality order was essential to the outcome *Kiobel* decision).

The same concerns that caused the court in *Kiobel* to preclude Section 1782 discovery from a U.S. law firm animate this matter. The documents sought by Petitioners were transmitted from abroad by one of Respondent's foreign clients to enable Respondent to provide legal advice and to make a document production in the New York derivative action. The documents were then produced in that action, not publicly, but pursuant to a protective order that required the documents to be used *only* for purposes of that litigation. Respondent states that its foreign client relied on the state court protective order when the documents were transmitted to Respondent from abroad and produced in discovery. While Petitioners argue that because the documents were previously produced in the state-court action, any concern about chilling attorney-client communications has dropped away, this Court does not agree. Petitioner's argument conflates confidential disclosure in litigation with public disclosure without a prior confidentiality agreement. Nothing in the record suggests that the documents lost their protected status vis-à-vis other litigants or became freely available for use

6

in unrelated proceedings just because they were produced in the state derivative action which has since settled. To the contrary. The production was made under a protective order designed to confine use of the documents to the derivative action itself. (ECF No. 23-2, at ¶ 6) Further, Petitioners – though expressing a willingness to enter a protective order for the purposes of obtaining the documents sought in this action – have not provided any assurances that the Cayman Islands Court will enforce a similar protective order here. (ECF No. 25, at pp. 3-4); s*ee id.*, at 247 ("*Kiobel* did not (presumably because she cannot) provide the U.S. courts with assurance that Dutch courts will enforce the protective orders that safeguard the confidentiality of Shell's documents. It is perilous to override the confidentiality order; doing so would inhibit foreign companies from producing documents to U.S. law firms, even under a confidentiality order, lest Section 1782 become a workaround to gain discovery.").

Allowing discovery here would convert a limited, court-supervised disclosure into a springboard for broader use in other litigation, thereby vitiating the underlying purpose of the protective order in the derivative action. *See Kiobel*, 895 F.3d at 246-47. As the court in *Kiobel* explained, if foreign clients have reason to fear that producing documents to U.S. counsel – even under a protective order – may later expose those materials to discovery in other proceedings, the likely result is hesitation in communications with counsel, incomplete document transmission, and "bad legal advice to the client, and harm to our system of litigation." *Id.* at 247. It is an inevitable consequence, if universalized, that if litigants are allowed to subpoena documents previously produced confidentially for use elsewhere (notwithstanding a protective order under which they were produced), foreign clients will have diminished confidence that U.S. courts can meaningfully cabin downstream use. *See also*

7

*Lelchook v. Lebanese Canadian Bank*, 670 F.Supp.3d 51, 55 (S.D.N.Y. 2023) (precluding discovery sought from attorneys under Rule 45, stating "the rationale for declining discovery aimed at foreign entities' U.S. law firms under Section 1782 applies with equal force to the same type of discovery sought pursuant to Rule 45.")

The policy considerations outlined above are factors that can be considered when evaluating if discovery is unduly burdensome and not proportional to the needs of the case. *Id*. That is, the burden imposed by the instant subpoena is significant because Respondent is a non-party law firm with no alleged involvement in the underlying transaction at issue in the Cayman appraisal proceeding, no financial interest in its outcome, and no role as a percipient actor in the events under valuation, and its relationship with its clients is threatened if the discovery is ordered and when allowing the discovery could undermine trust in judicial orders and the process of discovery in U.S. litigation. The burden is underscored when there may be more natural sources for the same information that have not been meaningfully ruled out. *See In re SBK ART LLC,* 168 F.4th at 85 (holding the district court's consideration of "the foreign location of the documents and the foreign status of their primary custodian" in addition to the overbreadth of the request militated against allowing for discovery (internal citations omitted)); *Banoka S.à.r.l. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 68-69 (2d Cir. 2025) ("[A] court *must* limit the frequency or extent of discovery otherwise allowed if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." (internal quotation marks and citations omitted) (emphasis in original)); *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997) ("If it were clear that discovery were equally available in both foreign and

8

domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative [under Rule 26].").  Indeed, Petitioners have not articulated why they cannot seek the same documents elsewhere.  The failure to pursue or explain the unavailability of less burdensome sources for the information sought in the subpoena also weighs against compelling production from counsel.  *In re Application of Orthogen International GmbH,* No. 24 Misc. 504 (VSB) (KHP), 2026 WL 311482 (S.D.N.Y. Feb. 5, 2026).  Insofar as the above analysis is sufficient to quash the subpoena, I do not address other arguments of Respondent.

## CONCLUSION

For the reasons set forth above, the motion to quash is GRANTED.   Within one week of this Opinion and Order, the parties shall submit a letter to the Court indicating whether there are any outstanding issues for the Court to address or whether, alternatively, this matter can be closed.

**The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 22**

**SO ORDERED.**

Dated:    April 10, 2026
            New York, New York

_____
          KATHARINE H. PARKER
          United States Magistrate Judge

9