# 26-1325

## United States Court of Appeals
## for the Second Circuit

507 SUMMIT LLC and KOA CAPITAL L.P.,

*Applicant-Appellants,*

-against-

BALANCE LAW PLLC, D/B/A BALANCE LAW FIRM,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR APPLICANT-APPELLANTS

AMINI LLC
*Attorneys for Applicant-Appellants*
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
jchubak@aminillc.com
jbrewer@aminillc.com



ELECTRONIC PARALEGAL

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, petitioner-appellant KOA Capital L.P. by and through its undersigned counsel represents that it does not have any corporate parent and no publicly held corporation owns 10% or more of its partnership interests; and petitioner-appellant 507 Summit LLC (together with KOA Capital L.P., "Petitioners") represents that the sole entity owning 10% or more of its membership interests is LG Multi-Asset Fund.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

JURISDICTIONAL STATEMENT ........ 1

ISSUES PRESENTED FOR REVIEW ........ 2

INTRODUCTION ........ 2

STATEMENT OF THE CASE ........ 4

A. The Cayman appraisal and the parties ........ 5

B. The New York derivative action and Balance's document chart ........ 7

C. The § 1782 application and the § 1782 Order ........ 8

D. The conforming subpoena and the motion to quash ........ 10

E. The Quashing Order ........ 13

F. Proceedings after the order ........ 15

SUMMARY OF ARGUMENT ........ 16

ARGUMENT ........ 18

I. STANDARD OF REVIEW ........ 18

II. QUASHING THE COURT-AUTHORIZED SUBPOENA ON § 1782 POLICY GROUNDS WAS AN ERROR OF LAW ........ 19

A. Category-level § 1782 policy cannot substitute for the movant's Rule 45 showing ........ 19

B. The fact pattern that was decisive in *Kiobel* is not present here: (1) Petitioners are not circumventing Cayman discovery rules, (2) Petitioners are not parties to the confidentiality order, (3) Balance is

not the foreign adversary's counsel, and (4) the documents were produced to litigation adversaries. ....................................................22

C. The Quashing Order inverted the movant's burden. ..........................26

III. QUASHING FOR "UNDUE BURDEN" WITHOUT EVIDENCE OF THE BURDEN WAS AN ERROR ........................................................................ 30

IV. THE QUASHING ORDER WAS PREMISED ON SPECULATION REGARDING ALTERNATIVE SOURCES AND THE INCORRECT PRESUMPTION THAT PETITIONERS ARE OBLIGED TO EXHAUST ALTERNATIVE SOURCES ..................................................................... 31

A. Speculative Alternative Sources........................................................31

B. Quasi-exhaustion requirement...........................................................33

V. EVEN IF BALANCE'S OBJECTIONS HAD MERIT, RULE 45(d)(3) REQUIRED MODIFICATION OR PROTECTIVE CONDITIONS, NOT OUTRIGHT QUASHAL ................................................................... 36

CONCLUSION ............................................................................................37

CERTIFICATE OF COMPLIANCE ............................................................ 39

SPECIAL APPENDIX.................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017) .......... 1, 27

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
262 F.R.D. 293 (S.D.N.Y. 2009) .......... 14, 30

*Bah v. Mukasey*,
529 F.3d 99 (2d Cir. 2008) .......... 19

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*,
55 F.4th 469 (5th Cir. 2022) .......... 19, 20

*Banoka S.à.r.l. v. Elliott Mgmt. Corp.*,
148 F.4th 54 (2d Cir. 2025) .......... 32, 33, 34, 36

*In re Batbold*,
2023 WL 2088524 (S.D.N.Y. Feb. 17, 2023) .......... 24

*Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.*,
215 F.3d 219 (2d Cir. 2000) .......... 32, 33

*In re Berlamont*,
2014 WL 3893953 (S.D.N.Y. Aug. 4, 2014) .......... 26

*In re Berlamont*,
773 F.3d 456 (2d Cir. 2014) .......... 26

*In re Biomet Orthopaedics Switzerland GmbH*,
742 F. App'x 690 (3d Cir. 2018) .......... 18, 25, 31, 36

*In re Application of CBRE Glob. Invs. (NL) B.V.*,
2021 WL 2894721 (S.D.N.Y. July 9, 2021) .......... 24

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) .......... 30

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) .................... 22, 28, 36

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
27 F.4th 136 (2d Cir. 2022) .................... 16, 19, 21, 36

*Gov't of Ghana v. ProEnergy Servs., LLC*,
677 F.3d 340 (8th Cir. 2012) .................... 19, 20

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) .................... passim

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).................... 9, 19, 23

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008).................... 30

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018) .................... passim

*Kirschner v. Klemons*,
2005 WL 1214330 (S.D.N.Y. May 19, 2005) .................... 14, 30

*Lelchook v. Lebanese Canadian Bank,*
670 F. Supp. 3d 51 (S.D.N.Y. 2023) .................... 21

*In re Letters Rogatory Issued by the Director of Inspection of the Government of India*,
385 F.2d 1017 (2d Cir. 1967) .................... 1

*Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*,
767 F. Supp. 1220 (S.D.N.Y. 1991) .................... 32, 33

*In re Application of Malev Hungarian Airlines*,
964 F.2d 97 (2d Cir. 1992) .................... 18, 36

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) .................... 18, 36

*In re Metallgesellschaft*,
121 F.3d 77 (2d Cir. 1997) .................... 18, 32, 33, 36

*In re Application of Orthogen Int'l GmbH*,
2026 WL 311482 (S.D.N.Y. Feb. 5, 2026) .................................................... 32

*Phoenix Meridian Equity Ltd. v. Lyxor Asset Management S.A.*,
Cause No. 311 of 2007 (Grand Ct. May 22, 2009) .......................................... 29

*Ratliff v. Davis Polk & Wardwell*,
354 F.3d 165 (2d Cir. 2003) ............................................................... passim

*Sampedro v. Silver Point Capital, L.P.*,
958 F.3d 140 (2d Cir. 2020) ....................................................................... 27

*In re Sarrio, S.A.*,
119 F.3d 143 (2d Cir. 1997) ................................................................... 21, 24

*In re SBK ART LLC*,
168 F.4th 68 (2d Cir. 2026) ................................................................ passim

*Thomas v. Roach*,
165 F.3d 137 (2d Cir. 1999) .................................................................. 13, 32

*Youngpoong Corp. v. PedalPoint Holdings, LLC*,
2026 WL 1085046 (2d Cir. Apr. 22, 2026) (Summary Order) ......................... 28

**Statutes and Rules**

28 U.S.C. § 636 ..................................................................................... 1, 4

28 U.S.C. § 1291 ........................................................................................ 1

28 U.S.C. § 1331 ........................................................................................ 1

28 U.S.C. § 1782 ................................................................................ passim

Cayman Companies Act § 238 ..................................................................... 5

Fed. R. App. P. 4 ........................................................................................ 2

Fed. R. App. P. 26 ...................................................................................... 2

Fed. R. Civ. P. 26 ........................................................................ 10, 33, 35, 36

Fed. R. Civ. P. 44.1 .................................................................................... 30

Fed. R. Civ. P. 45 ........................................................................ passim

Fed. R. Civ. P. 73 ........................................................................ 1

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. The January 26, 2026 order granting 28 U.S.C. § 1782 discovery (the "§ 1782 Order") (JA-305) was final. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) ("Orders granting (or denying) applications for discovery under Section 1782 are considered final adjudications and are immediately appealable").

A fortiori the April 10, 2026 order (the "Quashing Order") (SPA-1) quashing the resulting subpoena was final. That order disposed of the entire proceeding as to all parties. *In re Letters Rogatory Issued by the Director of Inspection of the Government of India*, 385 F.2d 1017, 1018 (2d Cir. 1967) (denial of motion to quash 28 U.S.C. § 1782 subpoena is a final, appealable decision). Finality rests on the Quashing Order's disposition of the entire proceeding, not on any later administrative closing. (JA-416.)

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because the underlying application was made under 28 U.S.C. § 1782. The parties consented (JA-3) to proceed before a magistrate judge for all purposes under 28 U.S.C. § 636(c), so the magistrate judge's final orders are appealable directly to this Court under 28 U.S.C. § 636(c)(3) and Rule 73(c).

The notice of appeal (JA-417) was timely filed on May 11, 2026 in accordance with Rule 4(a)(1)(A).[1]

## ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred by quashing an authorized § 1782 subpoena based on policy considerations previously resolved (after full briefing by the parties) at the authorization stage rather than applying the ordinary discovery rules governing the subpoena.

2. Whether the District Court abused its discretion by quashing the subpoena under Rule 45 without a particularized showing of burden and based on speculative alternative sources, without considering modification or protective conditions.

## INTRODUCTION

The Quashing Order under review (SPA-1-9) quashed a subpoena the District Court had itself authorized and tailored on January 26 after full briefing by the parties. The § 1782 Order found every statutory requirement of 28 U.S.C. § 1782 satisfied and every discretionary factor favoring discovery; it narrowed the subpoena to seventeen categories of documents bearing on share value and split the costs of production between the parties. (JA-321-323.) Respondent-appellee Balance Law

[1] The thirtieth day after the Quashing Order fell on Sunday, May 10, 2026, so the time to appeal ran through Monday, May 11, 2026 under Rule 26(a)(1)(C).

PLLC ("Balance") did not seek reconsideration. After the deadline for reconsideration had expired, Balance moved to quash. The District Court granted Balance's motion to quash the subpoena on the ground that the subject discovery that it had previously ordered and tailored presented an undue burden, due to the presence of a confidentiality order in the state court action. The motion to quash (1) did not add additional evidence quantifying burdens of cost or hours that compliance would require, (2) did not raise issues of policy not already present and considered in the original subpoena application and (3) made speculations about other parties that could be pursued to satisfy the discovery request.

The Grand Court of the Cayman Islands ("Cayman Court") is determining the fair value of the Petitioners' shares in the 2023 take-private of China Index Holdings Limited ("CIH"). Because the Cayman Court cannot compel a non-party to provide evidence, Petitioners obtained leave under § 1782 to subpoena from Balance, a New York law firm, a Bates-defined set of documents that Balance's clients had already produced in a New York derivative action. (JA-309, SPA-1-2, 5.)

The Quashing Order rests on two errors of law. First, it imported § 1782 policy considerations under a Rule 45(d) dispute instead of requiring the specific, evidence-based showing of concrete harm that Rule 45(d) ordinarily demands. Second, it credited speculation about alternative sources that Balance never proved. With both grounds gone, the Quashing Order is not supported. Even on its own reasoning, the

order reached too far. Rule 45(d)(3)(A) places modification beside quashing, and precedent requires that curable defects be met with tailoring rather than outright denial. Instead, the District Court quashed the subpoena it had itself already tailored, rejecting petitioners' protective-order offer for a legally erroneous reason.

## STATEMENT OF THE CASE

This appeal arises from a 28 U.S.C. § 1782 proceeding conducted on the parties' consent before Magistrate Judge Katharine H. Parker under 28 U.S.C. § 636(c). Petitioners applied for leave to subpoena documents from a New York law firm for use in a pending Cayman Islands share-appraisal proceeding. Rather than granting the application ex parte as is often done in the Southern District, Judge Parker directed the parties to fully brief the issues. By opinion and order dated January 26, 2026, the District Court granted the application and narrowed the proposed subpoena to seventeen categories of documents. (JA-321-322.) By order dated April 10, 2026, the District Court quashed the subpoena. (SPA-9.) The facts relevant to the issue submitted for review are described in the unappealed § 1782 Order authorizing the subject discovery. The overview of the facts is structured into the following six sections:

A. The Cayman appraisal and the parties

B. The New York derivative action and Balance's document chart

C. The § 1782 application and the § 1782 Order

D. The conforming subpoena and the motion to quash

E. The Quashing Order

F. Proceedings after the order

### A. The Cayman appraisal and the parties

Petitioners are Class A ordinary shareholders in CIH that dissented from a take-private transaction, prompting the commencement of a Cayman Islands Companies Act § 238 appraisal proceeding. (JA-305.)

CIH was originally formed as a subsidiary of Fang Holdings Limited ("FHL") and was spun off as a separate publicly traded company in 2019. (JA-306.) "At all relevant times, [Vincent Tianquan] Mo exercised effective voting control over both FHL and CIH through his ownership interests and affiliated entities." (JA-306.)

In October 2022, FHL, Mo and General Atlantic formed a consortium that sought to take CIH private, and ultimately offered a $1.00 per share purchase price. CIH's special committee and board approved the merger on December 22, 2022, and the transaction closed in April 2023. (JA-306-307.) "Petitioners dissented from the merger and invoked their appraisal rights under Cayman law." (JA-307.) Appraisal proceedings were commenced in the Cayman Court under section 238 of the Cayman Islands Companies Act seeking judicial determination of the fair value of their shares. (JA-307.) "Discovery in the Cayman appraisal proceeding is ongoing." (JA-307.)

The Cayman Court's Directions Order (JA-119) governs the appraisal process. It establishes a Data Room that no expert or appointee may access until a court-prescribed confidentiality and non-disclosure agreement in the form of its Appendix 2 has been executed. (JA-121-122 ¶¶7-9.) The prescribed agreement restricts use of disclosed material to the proceedings (JA-141 ¶3.1) and addresses disclosure compelled by law (JA-140-141 ¶2.3.) The Directions Order preserves "each Party's implied obligation not to use the documents obtained thereby for any improper or collateral purpose" (JA-125 ¶19), requires any party seeking assistance under 28 U.S.C. § 1782 to notify the court within seven days of service of the § 1782 application and to disclose the fruits promptly to the other parties (JA-132 ¶¶47-48), and provides that CIH's disclosure duty reaches documents "in its possession, custody or power" (JA-122-123 ¶¶11-12).

CIH failed to comply with its disclosure obligations under a Directions Order issued by the Cayman Court. Petitioners submitted a letter in which their Cayman counsel reported to CIH's Cayman counsel that CIH was past due on the Directions Order's deadlines for appointing a valuation expert and uploading Buyer Group Data, describing what the letter called CIH's "casual disregard for the Directions Order." (JA-296.)

While "[t]he Cayman Court cannot compel a non-party to provide evidence for an appraisal proceeding[,]" it "permits the submission of evidence obtained

through foreign judicial assistance, including evidence obtained pursuant to 28 U.S.C. § 1782." (JA-307.)

### B. The New York derivative action and Balance's document chart

Balance is a New York law firm. It represented Mo and Richard Jiangong Dai, "current and former controlling persons" of FHL, in a shareholder derivative action in New York County Supreme Court. Balance is not a party to the Cayman appraisal proceeding. (JA-306.)

In the New York action, two derivative plaintiffs, Oasis Investments II Master Fund Ltd. ("Oasis") and Lorelei NCC Inc. ("Lorelei"), sued Mo, Dai, and affiliated entities for breach of fiduciary duty arising out of transactions involving FHL and CIH (the "Oasis action"). (JA-306-308.) Balance represented the defendants in that action. According to Balance's submissions, its clients produced "over 300,000 pages of documents," at an original production cost "exceeding $300,000" billed by the discovery vendor Alvarez & Marsal. (JA-10, JA-26 ¶30.)

As part of discovery disputes in the state action, Balance produced a table identifying, by Bates number, the categories of documents responsive to the issues the derivative plaintiffs had raised. (JA-308-309, JA-334-342.) The table was e-filed in the state action as NYSCEF No. 380. (JA-309.)

Balance's clients, which Balance's own papers refer to as "the Foreign Clients" (JA-328 ¶6), are Mo, Dai, Media Partner, Next Decade, True Knight, ACE Smart, and nominal defendant FHL (JA-306, JA-391).[2]

The declaration of Balance's principal (JA-25 ¶¶24-25) recounted discussions in which Balance proposed production conditioned on reciprocal discovery; no agreement was reached. (JA-25 ¶¶24-26.)

### C. The § 1782 application and the § 1782 Order

"Petitioners filed the present application under 28 U.S.C. § 1782 seeking authorization to subpoena Respondent for documents identified in the discovery chart produced in the New York derivative action." (JA-309.) After full briefing, the District Court granted the application on January 26, 2026. (JA-321-322, JA-324.)

While § 1782 applications in this Circuit are often approved ex parte, meaning a district court will approve an application that appears on its face to meet the requirements of the law without hearing from respondent first and preserving the right of respondents to challenge the subpoena later, this procedure was not followed here. Instead, the District Court invited Balance to respond to the application.

[2] Balance signed the March 31, 2025 stipulation withdrawing Lorelei as a plaintiff on behalf of each, including nominal defendant FHL. (JA-390 ¶¶1-3.)

Respondent did so, filing a nine-page opposition on August 8, 2025, 57 days after it was served with the application.

The District Court held that Petitioners met every statutory requirement. (JA-312-315.) It then weighed each discretionary factor under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). On the first factor, it found that Balance "is not a participant in the pending foreign proceeding" and that no basis had been articulated "for a court in the Cayman Islands to have jurisdiction over the Respondent" which therefore "militates in favor of discovery." (JA-316.) On the second factor, it found the Cayman Court to be receptive to § 1782 assistance. (JA-316-318.) On the third factor, circumvention, it applied the rule that "[o]nly where materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated," and found that Balance "does not make the argument that any of the documents Petitioners seek are privileged or otherwise undiscoverable." (JA-318.) The District Court acknowledged that Petitioners sought evidence they could not obtain in Cayman and held: "On the contrary, facilitating access to evidence unavailable or unobtainable by a foreign court is exactly the kind of support the statute was intended to provide." (JA-319.) It found no "indication of bad faith on Petitioners' part" and deemed their other § 1782 applications "at most a neutral consideration." (JA-319-320.)

On the fourth factor, the District Court narrowed the discovery. It approved seventeen categories of documents it found "relevant to the CIH share valuation and proportional to the needs of the case," and excluded nine categories that "do not bear on the determination of CIH's fair value as of the valuation date." (JA-321-322.) In a footnote, the court reserved Balance's retaliation argument: "Because the Court will narrow the discovery requests, it does not address Respondents' argument that the discovery is retaliatory, as that argument goes principally to the burden of the discovery sought." (JA-321 n.2.) The District Court ordered Petitioners to bear fifty percent of Balance's production costs. (JA-323.) It closed by inviting further motion practice: "Any motion to quash, modify or for other relief by Respondent shall be filed within thirty days of this Order." (JA-324.) Petitioners did not seek reconsideration of the narrowing or the cost allocation.

### D. The conforming subpoena and the motion to quash

Petitioners served a subpoena seeking those documents as to which discovery was authorized. (JA-331-342.) The Quashing Order described it as "the subpoena Plaintiff issued in response to the Court's Order." (SPA-2.) The subpoena did not seek those documents which the District Court determined (JA-322) were outside the scope of Rule 26(b)(1).

On February 25, 2026, Balance moved to quash. (SPA-2.) The District Court framed the issue presented on the motion as whether it is "contrary to public policy

and overly burdensome to require Respondent – a law firm – to produce the documents." (SPA-2.) The motion offered no evidence of burden such as the cost, volume or hours required for compliance with a request for a Bates-defined set of documents that Balance's clients had already produced in the New York derivative action.

Balance also argued that the stipulated confidentiality order under which the documents were produced in the Oasis action (the "Oasis stipulation," JA-344) barred their production here. (SPA-2.)

The factual submission of Balance was a declaration of its principal, asserting that Balance's foreign clients had relied on the Oasis stipulation. (JA-328 ¶9.) The stipulation, so-ordered on November 19, 2024, defines a "Receiving Party" as "the party receiving Confidential Information in connection with depositions, document production or otherwise." (JA-345 ¶3.) It states that except "with the prior written consent of the Producing Party or by Order of the Court," Confidential Information "shall not be furnished, shown or disclosed" to any person or entity outside listed categories. (JA-345 ¶5.) "Confidential Information shall be utilized by the Receiving Party and its counsel only for purposes of this litigation and for no other purposes." (JA-346 ¶6.) The Petitioners are not parties to the Oasis action and are not signatories to the stipulation. (JA-351.)

Balance also asked the District Court, in the alternative, to "order the parties to meet and confer in a good-faith effort to reach agreement regarding a proposed protective order, to be submitted to the Court, that would protect the confidentiality of the documents, along the lines of the Confidentiality Protective Order that governed the production of the documents in the State Court Action." (JA-367.)

Petitioners opposed the motion to quash. Petitioners argued that once the § 1782 Order "opened the statutory gate," disputes about the subpoena are "governed by ordinary rules of discovery" and "section 1782 drops out." (JA-375.) Petitioners also expressed willingness to enter a protective order mirroring the state-court protections. (See SPA-7 (acknowledging the offer), JA-375-376.)

Balance's reply argued that the subpoena "should be subjected to heightened scrutiny and quashed." (JA-398.) In a footnote, it argued that the § 1782 Order "was an interlocutory (i.e., non-final) order, so this Court is free to revisit that ruling..." (JA-399-400 n.2.) The reply also introduced new evidence through a supplemental declaration of Balance's principal identifying Lorelei, one of the two derivative plaintiffs, as a New York corporation that received the production. (JA-381 ¶5.) Balance then argued that Petitioners "could have" sought the documents from Lorelei and that seeking them from Balance Law "further supports the conclusion that they did so to harass and retaliate against Balance Law." (JA-404.) The supplemental declaration also stated that the state court action "has been settled and

a final judgment has been entered," and that Lorelei had withdrawn as a plaintiff by stipulation in March 2025. (JA-381 ¶¶4, 6, JA-389-391.)

Petitioners promptly flagged the new-in-reply character of the Lorelei evidence and sought leave to file a short response. Their letter invoked the rule that courts need not consider matters raised for the first time in reply, citing *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). (JA-408.) The letter attached the proposed response, a page and a half, which answered the Lorelei point: at best, the new evidence "shows only that a § 1782 proceeding *could have* been commenced against another entity" (JA-409-410 (emphasis added)) not that it *should have*. Further, it did not refute the argument and evidence presented in the accepted § 1782 application, which showed that it was not retaliatory. Balance did not object to Petitioners' request to file a surreply: "Balance Law does not object to Petitioners' being granted leave to file that surreply, so long as the Court allows Balance Law to file a brief response to that surreply." (JA-412.) However, the District Court denied leave along with Petitioners' request (JA-407) for oral argument: "The issues which the Court must review are clear and the briefing is sufficient for the Court's consideration." (JA-414.)

### E. The Quashing Order

On April 10, 2026, the court granted the motion and quashed the subpoena. (SPA-1.)

The Quashing Order recited the movant's burden as follows: the party moving to quash "carries the burden of showing that a subpoena imposes an undue burden on a witness," and must set forth "the manner and extent of the burden and the probable negative consequences of insisting on compliance." (SPA-4 (citing *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009), and quoting *Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005)).)

The District Court also acknowledged that it may appear that "there is limited burden to producing" (SPA-5) documents that were produced in the state court derivative action. Nonetheless, it quashed on two grounds.

First, invoking the policy concerns animated by *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018), the District Court described policy considerations "that can be considered when evaluating if discovery is unduly burdensome and not proportional to the needs of the case." (SPA-6-8.) The court said that the *Kiobel* policy considerations animating the present matter include concern that "[a]llowing discovery here would convert a limited, court-supervised disclosure into a springboard for broader use in other litigation, thereby vitiating the underlying purpose of the protective order in the derivative action." (SPA-7.) "Further, Petitioners – though expressing a willingness to enter a protective order for the purposes of obtaining the documents sought in this action – have not

provided any assurances that the Cayman Islands Court will enforce a similar protective order here.” (SPA-7.)

The second ground for the Quashing Order was that there was an absence of explanation by the Petitioners as to why they could not seek the same documents elsewhere, especially when, according to the District Court, the Petitioners could not rule out that there were more natural sources for the information: “Indeed, Petitioners have not articulated why they cannot seek the same documents elsewhere.” (SPA-9.) “The burden is underscored when there may be more natural sources for the same information that have not been meaningfully ruled out.” (SPA-8.)

The Quashing Order declined to address the other arguments: “Insofar as the above analysis is sufficient to quash the subpoena, I do not address other arguments of Respondent.” (SPA-9.)

**F. Proceedings after the order**

At Petitioners’ request, with Respondent’s consent, the District Court kept the case open pending the determination to appeal. (JA-416.)

The Cayman appraisal remains pending. The Cayman Court’s Directions Order listed the trial for the first available date after September 15, 2026. (JA-133 ¶54.)

## SUMMARY OF ARGUMENT

Two orders of the same judge, seventy-four days apart, frame this appeal. The § 1782 Order held that Petitioners satisfied every statutory requirement of 28 U.S.C. § 1782, that every discretionary factor favored discovery, and that obtaining this evidence "is exactly the kind of support the statute was intended to provide"; it tailored the subpoena to seventeen categories of documents bearing on share value and split production costs between the parties. (JA-316-324.) The Quashing Order quashed that subpoena without revisiting a single January finding, on a record containing no new evidence of burden. Each ground of the Quashing Order rests on legal error.

First, quashing the previously-authorized subpoena on § 1782 policy grounds was an error of law. Once a court grants a § 1782 application and opens the statutory gate, disputes over the resulting subpoena are governed by the ordinary rules of discovery and "section 1782 drops out." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011); *In re SBK ART LLC*, 168 F.4th 68, 78 (2d Cir. 2026). The Quashing Order recited that architecture, then ran the gate-stage inquiry a second time, quashing on the categorical policy concerns of *Kiobel*, rather than on the specific, evidence-based showing of concrete harm that Rules 26(c) and 45(d) demand. That erected an "extra-statutory barrier[]" to discovery this Court forbids, *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir.

2022), and a ruling "premised on the misapplication of a legal principle" is "by definition" an abuse of discretion, *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 168 (2d Cir. 2003). *Kiobel*'s "extraordinary, and possibly unique" (895 F.3d at 246-47) facts are absent in any event: petitioners are not circumventing any Cayman proof-gathering restriction, they are strangers to the Oasis stipulation and Balance is not the foreign adversary's counsel. The Quashing Order also inverted the movant's burden when it faulted Petitioners for not supplying "assurances" (SPA-7) of Cayman enforcement: a mirroring protective order is enforced by the District Court's own contempt power over these U.S. petitioners, and the Cayman Court's Directions Order (JA-121-122) and Appendix 2 non-disclosure agreement (JA-139-141) supply the confidentiality architecture the Quashing Order found missing.

Second, quashing for "undue burden" without evidence of the burden was legal error. The movant "carries the burden of showing that a subpoena imposes an undue burden on a witness" (SPA-4) yet Balance offered no cost figure, no hours, no custodian count — nothing describing the burden of handing over an existing, review-complete, Bates-defined electronic set, with half of any cost already shifted to petitioners by the § 1782 Order. "A specific showing of burden is commonly required," *Heraeus*, 633 F.3d at 598, and the Third Circuit vacated a similar order where the movant "did not proffer any empirical evidence" of burden as to files that

were "already packaged for discovery." *In re Biomet Orthopaedics Switzerland GmbH*, 742 F. App'x 690, 699 (3d Cir. 2018).

Third, the order rested on speculation that other sources "may" exist and had "not been meaningfully ruled out" — a quasi-exhaustion requirement this Court has three times rejected, *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992); *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997); *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) — grounded on authorities the movant never briefed, after the District Court denied the supplemental briefing both parties had accepted. The § 1782 Order had already answered the question: the Cayman Court cannot compel a non-party, Balance is beyond Cayman jurisdiction and the granted categories are FHL-side communications CIH would not naturally hold.

The Court should reverse the Quashing Order and remand with instructions to reinstate the subpoena as narrowed by the § 1782 Order, with protective terms to be settled by the District Court on remand; in the alternative, it should vacate the Quashing Order and remand for a new Rule 45 analysis, including consideration of modification and protective conditions.

## <u>ARGUMENT</u>

### I. STANDARD OF REVIEW

This Court reviews a refusal to enforce a subpoena for abuse of discretion. *Ratliff*, 354 F.3d at 168. A ruling "premised on the misapplication of a legal

principle" is "by definition" an abuse of discretion and an error of law. *Ratliff*, 354 F.3d at 168; *see also SBK*, 168 F.4th at 75-76. The Quashing Order's application of *Kiobel* presents an issue of law. Issues of law and application of law to undisputed facts are reviewed de novo. *Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008).

## II. QUASHING THE COURT-AUTHORIZED SUBPOENA ON § 1782 POLICY GROUNDS WAS AN ERROR OF LAW

### A. Category-level § 1782 policy cannot substitute for the movant's Rule 45 showing

The grounds of the Quashing Order resurrected § 1782 policy considerations addressed and retired under the prior § 1782 Order. However, once a court grants a § 1782 application, Federal rules of discovery govern and "section 1782 drops out." *Heraeus*, 633 F.3d at 597, quoted in *SBK*, 168 F.4th at 78; accord *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012); *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 474-75 (5th Cir. 2022).

Section 1782 works in two stages. In the first stage, the District Court is guided by statute and the *Intel* factors to decide whether to authorize discovery. The first stage "acts as a gate designed to prevent abuses." *SBK*, 168 F.4th at 83. The statute and *Intel* factors limit the courts from engaging in free-ranging policy analysis and prevent the court from reading "extra-statutory barriers to discovery into section 1782." *Nigeria*, 27 F.4th at 148; *id.* at 155 (discretion "is not a license to engage in a free-ranging policy analysis" without a basis in the statute). After the

first stage, objections "based on the fact that discovery is being sought for use in a foreign court" are "cleared away." *Heraeus*, 633 F.3d at 597; *accord Ghana*, 677 F.3d at 343; *Banca Pueyo*, 55 F.4th at 474-75.

The second stage is governed by the Federal Rules: once "a district court has opened the statutory gate to discovery, any disputes around its proper scope are governed by the ordinary rules of discovery, including the Federal Rules of Civil Procedure." *SBK*, 168 F.4th at 78 (citing *Heraeus*, 633 F.3d at 597); *accord Ghana*, 677 F.3d at 343; *Banca Pueyo*, 55 F.4th at 474-75.

The Quashing Order recited this architecture but nevertheless ran the gate-stage inquiry a second time. The first page of the court's analysis frames the motion as asking "whether it is contrary to public policy and overly burdensome to require Respondent — a law firm — to produce the documents …." The § 1782 Order had already tailored the subpoena for proportionality — approving seventeen categories "relevant to the CIH share valuation and proportional to the needs of the case" — and split production costs between the parties, as noted above. (JA-321-323.) A post-grant motion may press a Rule 45(d) undue burden objection, but only on evidence such as cost figures, hours, a custodian count, or a specific, concrete harm a protective stipulation could not cure. Balance offered none so the Quashing Order could point to none. It credited instead a class of policy considerations about the use of discovery in a foreign court, the foreign client's reliance on a U.S. protective

order, doubt that a Cayman court would enforce a mirroring order and the fear that production would become "a springboard for broader use in other litigation." (SPA-6-8.) Crediting that class-level policy under a Rule 45 caption engaged the extra-statutory barrier that *Nigeria* forbids. A ruling "premised on the misapplication of a legal principle" is "by definition" an abuse of discretion. *Ratliff*, 354 F.3d at 168.

The Quashing Order's doctrinal answer is *Lelchook v. Lebanese Canadian Bank*, 670 F. Supp. 3d 51, 55 (S.D.N.Y. 2023) (Parker, J.). *Lelchook* is quoted for the proposition that "the rationale for declining discovery aimed at foreign entities' U.S. law firms under Section 1782 applies with equal force to the same type of discovery sought pursuant to Rule 45." At the outset, no authority is cited for that proposition, and the preceding citations (*Kiobel*, 895 F.3d at 245-246 and *In re Sarrio, S.A.*, 119 F.3d 143 (2d Cir. 1997)) do not address the issue. Further, taken on its own terms, *Lelchook* permits a court to weigh confidentiality and reliance facts but does not remove the movant's burden to show evidence and cannot supply evidence the movant never filed. *SBK*, 168 F.4th at 83 directs that remaining objections "may be resolved by the District Court applying the ordinary rules of discovery." However, as shown later (Argument II.B), the facts that gave those concerns dispositive force in *Kiobel* are absent here.

Nor were these considerations new. The reliance and "springboard" concerns are the confidentiality and use objections the § 1782 Order resolved when it found

that Balance "does not make the argument that any of the documents Petitioners seek are privileged or otherwise undiscoverable," found no "indication of bad faith," and held that obtaining this evidence "is exactly the kind of support the statute was intended to provide." (JA-318-320.) The law-firm concern is the extra-scrutiny argument the § 1782 Order noted before granting discovery from this law firm anyway. The Cayman "assurances" doubt reprises the foreign-law speculation the § 1782 Order rejected, quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) for tailoring rather than denial (addressed further in Argument II.C). (JA-316-318.) The one argument the § 1782 Order reserved was retaliation (JA-321 n.2), but that argument was not the basis for the Quashing Order which instead reweighed concerns the § 1782 Order had already resolved.

### B. The fact pattern that was decisive in *Kiobel* is not present here: (1) Petitioners are not circumventing Cayman discovery rules, (2) Petitioners are not parties to the confidentiality order, (3) Balance is not the foreign adversary's counsel, and (4) the documents were produced to litigation adversaries.

The Second Circuit noted the circumstances in *Kiobel* were "extraordinary, and possibly unique"; namely, a petitioner seeking 28 U.S.C. § 1782 discovery of her Dutch litigation opponent's law firm in order to circumvent a U.S. stipulated confidentiality order that she had entered into with the same litigation opponent a decade prior, all in the context of Dutch discovery restrictions that the § 1782 application sought to circumvent. None of these issues are presented here.

***(i) No Circumvention***

In *Kiobel*, "statements made by Kiobel's counsel demonstrate[d] that Kiobel [was] trying to circumvent the Netherlands' more restrictive discovery practices." 895 F.3d at 245. In contrast to the Netherlands, the Cayman Court's practice "permits the submission of evidence obtained through foreign judicial assistance, including evidence obtained pursuant to 28 U.S.C. § 1782." (JA-307.) Far from circumvention, this discovery "is exactly the kind of support the statute was intended to provide." (JA-319.)

***(ii) Petitioners are not parties to the confidentiality order***

In *Kiobel*, the confidentiality order was "dispositive" (*SBK*, 168 F.4th at 81-82) because (1) the petitioner, Kiobel, had signed the order for confidentiality, 895 F.3d at 241; (2) the relief required rewriting that order, *id*. at 242; and (3) the rewrite stripped the producing party's rights, *id*. at 242-43. None of these circumstances apply here.

***(iii) No Adversary counsel status***

In *Kiobel*, the petitioner subpoenaed Cravath who was counsel to Shell, the opponent in the Dutch litigation. In this case, Balance is not the foreign adversary's counsel (i.e., Balance does not represent CIH). Instead, Balance was retained by the Foreign Clients, FHL-side defendants in a different, now settled state action. (JA-381 ("The State Court Action has been settled and a final judgment has been entered").) Courts in this district have held that the first *Intel* factor "does not weigh

against granting discovery against ... corporate affiliates of participants in foreign proceedings, even where the foreign participant may also possess the sought-after information." *In re Batbold*, 2023 WL 2088524, at *5 n.1 (S.D.N.Y. Feb. 17, 2023); *see In re Application of CBRE Glob. Invs. (NL) B.V.*, 2021 WL 2894721, at *10 (S.D.N.Y. July 9, 2021) (granting a § 1782 application against a corporate affiliate of a party to the foreign proceeding).

***(iv) Law Firm as counter-parties and confidential information***

The Quashing Order herein also stated that "[t]he same concerns that caused the court in *Kiobel* to preclude Section 1782 discovery from a U.S. law firm animate this matter." (SPA-6.) But the Second Circuit recently affirmed that "*Kiobel's* policy concerns alone do not require denial." *SBK*, 168 F.4th at 84. And *Kiobel* itself is easily distinguishable.

Balance cited *Kiobel's* discussion of *Sarrio*, 119 F.3d at 146 which expressed concern about documents becoming discoverable only because a foreign client "sent them to a lawyer in the United States for advice." In other words, the documents were in the United States only for purposes of a legal review by counsel. Here, Petitioners are seeking documents that the Foreign Clients already produced to an adversary in a state court action. There is no argument that they are privileged. Furthermore, *SBK* qualifies the *Sarrio* discussion as being "commentary," "relevant to our discussion, but not the sole basis for our decision" (*SBK*, 168 F.4th at 81-82),

and allowed discovery of materials "shared with third parties other than Fortenova" (*id*. at 85), the client whose confidences were at stake there. This Court in *SBK* specifically endorsed the District Court's approach "limit[ing] production to only non-privileged materials uniquely possessed by Akin or shared with third parties other than Fortenova." 168 F.4th at 84. This Court noted this approach "balanced *SBK's* need for discovery to assist it in foreign litigation with Akin's concerns regarding attorney-client relations and undue burden." *Id*. This Court rejected the contention that documents are beyond the reach of § 1782 simply because they are being held by a law firm.

In *Biomet*, 742 F. App'x at 690-91, the Third Circuit vacated an order quashing 28 U.S.C. § 1782 discovery of purported trade-secret documents Heraeus (the objector; Biomet was the applicant) had produced under a protective order and that were held in the custody of two law firms. In vacating, the Third Circuit observed *Kiobel* held that 28 U.S.C. § 1782 contains "no express mandate to consider a principal-agent relationship, or whether documents being held by the subpoenaed party belong to a foreign party." *Id*. at 695 (quoting *Kiobel*, 895 F.3d at 244). The Third Circuit remanded to consider whether more tailored requests or imposition of confidentiality conditions would address the subject objections. This record is easier in every direction relative to *Biomet* since no trade secrets are claimed anywhere, and Balance offered no explanation, let alone evidence, of how

the subpoenaed documents even qualify as Confidential Information under the Oasis stipulation.

In *In re Berlamont*, 2014 WL 3893953, at *2 (S.D.N.Y. Aug. 4, 2014), *aff'd sub nom.* 773 F.3d 456 (2d Cir. 2014), the petitioner obtained deposition materials held by a law firm and designated confidential under a stipulated order in another action. This Court affirmed the "well-reasoned" decision. 773 F.3d at 459.

**C. The Quashing Order inverted the movant's burden.**

The Quashing Order acknowledges that the movant "carries the burden of showing that a subpoena imposes an undue burden." (SPA-4.) Here, the movant did not provide evidence to meet the burden. Nor did it submit Cayman-law evidence concerning the enforcement of protective orders in Cayman. However, the Quashing Order held that the Petitioners "have not provided any assurances that the Cayman Islands Court will enforce a similar protective order here." (SPA-7.) In other words, the non-movants lost for failing to prove a negative the movant did not litigate.

The sentence in *Kiobel* addressing issues of foreign enforcement of a U.S. protective order described a signatory-movant who sought court-ordered modification of a protective order that would have left Shell without enforcement rights anywhere. 895 F.3d at 247 ("Kiobel did not (presumably because she cannot) provide the U.S. courts with assurance that Dutch courts will enforce the protective orders that safeguard the confidentiality of Shell's documents"). *Kiobel's*

confidentiality concerns sought to protect against a fact pattern not present here. Petitioners do not seek to modify the Oasis stipulation or eliminate its beneficiaries' enforcement rights. Those facts, together with Balance's own protective-order fallback (JA-367, JA-405) and the safeguards already in this record, support tailoring, not quashing.

A District Court considering a § 1782 application may "impose conditions it deems desirable," and it polices U.S. recipients through its own protective order. *Sampedro v. Silver Point Capital, L.P.*, 958 F.3d 140, 144–45 (2d Cir. 2020) (quoting *Accent Delight*, 869 F.3d at 134). A mirroring Federal protective order would bind these U.S. Petitioners under penalty of contempt. Balance, the producing law firm, is likewise before the same court. Cayman-side recipients — the parties, experts, and appointees who later see the material in the appraisal — are bound by a different instrument: the Appendix 2 NDA, which the Directions Order requires before Data Room access (JA-121-122 ¶¶7, 9). The Directions Order also requires any party who obtains § 1782 assistance to disclose the fruits promptly to the other parties (JA-132 ¶¶47-48), so the production enters that NDA regime. That is a layered confidentiality architecture, not evasion of the Oasis stipulation. Petitioners are strangers to that stipulation and seek no modification of it.

The Quashing Order's requirement that the non-movant prove that Cayman will enforce a U.S. protective order is an error of speculation forewarned by both the

§ 1782 Order and precedent. Speculation about foreign law cannot defeat § 1782 relief. The § 1782 Order stated the rule: "evidence that depends on equivocal readings of foreign law or foreign policy is ordinarily inadequate to justify the denial of discovery in a Section 1782 action." (JA-317.) In *Youngpoong Corp. v. PedalPoint Holdings, LLC*, 2026 WL 1085046 (2d Cir. Apr. 22, 2026) (Summary Order), the Second Circuit affirmed the orders granting *Youngpoong's* § 1782 application and denying PedalPoint's motion to quash, noting that even though evidence was submitted regarding Korean law's stance on disclosure, the evidence was equivocal. *Id*. at *3 ("We need not decide whether the district court improperly required 'authoritative proof' because PedalPoint has failed to show — under any standard — that Korean law shields the evidence requested here"). In the present case, Balance offered zero Cayman-law evidence: no expert declaration, no Cayman authority, and nothing sworn. The "assurances" point entered the case as attorney argument in a reply brief with no Cayman-law declaration behind it. (JA-400.) On this issue, this Court has instructed that such concerns be met "by issuing a closely tailored discovery order rather than by simply denying [the] relief outright," *Euromepa*, 51 F.3d at 1101, which instruction the § 1782 Order invoked. (JA-318 (quoting *Euromepa*).)

Furthermore, the record has the confidentiality architecture the order said was missing. The Cayman Court's own Directions Order requires that no expert or

appointee access the Data Room until the Appendix 2 NDA has been executed. (JA-121-122 ¶7.) The NDA restricts use of material to the Proceedings (JA-141-142 ¶¶3.1-3.4), provides for injunctive relief (JA-145 ¶7), and addresses compelled disclosure: material disclosed under compulsion "shall maintain its confidentiality protection for all purposes other than such disclosure compelled by applicable law, rule or regulation." (JA-140-141 ¶¶2.3-2.4.) Its jurisdiction clause permits "interlocutory or interim injunctive relief in other jurisdictions" (JA-147 ¶¶12.2-12.3), so a Cayman confidentiality obligation can be policed in New York. The NDA does not convert the S.D.N.Y. order into a Cayman decree, and it does not have to. Each court enforces the instrument issued to the persons before it.

*Phoenix Meridian Equity Ltd. v. Lyxor Asset Management S.A.*, Cause No. 311 of 2007 (Grand Ct. May 22, 2009) refused to enjoin § 1782 depositions precisely because the U.S. court could control their scope and protect against oppression. (JA-293-295 ¶¶39-40, 47.)

The Petitioners have offered to enter a mirroring protective order (SPA-7 (acknowledging the offer), JA-373) carrying every protection in the Oasis stipulation into this proceeding, with express enforcement and intervention rights for Balance's clients, to be settled and entered by the District Court on remand.

The Quashing Order never engaged the Directions Order, the NDA, the undertaking or the compelled-disclosure protocol, all of it docketed since August

2025. (JA-119.) As for preservation, foreign law presents a question of law, and a court "may consider any relevant material or source," at any stage under Rule 44.1.

## III. QUASHING FOR "UNDUE BURDEN" WITHOUT EVIDENCE OF THE BURDEN WAS AN ERROR

The Quashing Order identifies the governing standard but does not apply it. The movant "carries the burden of showing that a subpoena imposes an undue burden on a witness" and "must set forth 'the manner and extent of the burden and the probable negative consequences of insisting on compliance.'" (SPA-4 (citing *Aristocrat Leisure*, 262 F.R.D. at 299, and quoting *Kirschner*, 2005 WL 1214330, at *2).) *Kirschner* added (at *2) that "[i]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." "The burden of persuasion in a motion to quash ... is borne by the movant," *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996), and "[o]nce the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome," *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008).

Balance did not carry its burden. There was no cost figure, no hours, no custodian count, no logistics in its papers. There was nothing describing the burden of handing over an existing, review-complete, Bates-defined electronic set. The figures that are produced – e.g. Balance's clients produced "over 300,000 pages" in

the state action, at an original production cost "exceeding $300,000" billed by Alvarez & Marsal (JA-10, JA-26 ¶30.) — described the already-completed production for the state court. Those costs had been incurred years prior and the resulting production sits on a vendor's system. This remaining burden was, according to the § 1782 Order, lessened further because it was to be split 50/50 with the Petitioners. (JA-323.) The same order found that Balance "does not represent whether or not it can readily 'bear the costs' of production." (JA-323.) According to *Heraeus*, 633 F.3d at 598, "[a] specific showing of burden is commonly required by district judges faced with objections to the scope of discovery." The Third Circuit applied the same rule to a law firm holding an already-packaged production: Heraeus "did not proffer any empirical evidence that Biomet's request would be too burdensome, particularly when the files are already packaged for discovery in the Esschem case." *Biomet*, 742 F. App'x at 699.

## IV. THE QUASHING ORDER WAS PREMISED ON SPECULATION REGARDING ALTERNATIVE SOURCES AND THE INCORRECT PRESUMPTION THAT PETITIONERS ARE OBLIGED TO EXHAUST ALTERNATIVE SOURCES

### A. Speculative Alternative Sources

In place of requiring the movant to meet its evidentiary burden, the Quashing Order faulted petitioners because they "have not articulated why they cannot seek the same documents elsewhere." (SPA-9.) The order speculated that other sources "may" exist and had "not been meaningfully ruled out." (SPA-8.) The language of

"may," "might," and "not been meaningfully ruled out" stood in for movant proof that was never filed while the non-movant had the task of exhaustively negating speculative alternatives that the movant never briefed.

While Balance did brief two arguments (*Kiobel* policy and retaliation) (JA-354-367), the authorities cited by the Quashing Order in support of alternative sources (*Banoka S.à.r.l. v. Elliott Mgmt. Corp.*, 148 F.4th 54 (2d Cir. 2025), *Metallgesellschaft* and *In re Application of Orthogen Int'l GmbH*, 2026 WL 311482 (S.D.N.Y. Feb. 5, 2026)) do not appear in the Balance brief and *SBK* was mentioned in Balance's reply in the context of *Kiobel*. The Lorelei alternative-source theory also entered in Balance's reply, and only in service of a retaliation inference already considered in the submissions for the § 1782 Order. The court refused the supplemental briefing both parties had accepted. (JA-414.) Despite all this, the Quashing Order quashed in part based on the unbriefed alternative-sources grounds. The District Court refused Petitioners' request to respond and then grounded the Quashing Order on material Petitioners were not allowed to answer.

A court presented with genuinely new material in reply is permitted to disregard it, *Thomas v. Roach*, 165 F.3d at 146 or permit a response before ruling, *Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) ("[T]he district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion") (quoting *Litton Indus. v.*

*Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991)). The District Court did neither. Petitioners sought leave to file a page-and-a-half response and Balance consented (JA-408-411) but the District Court denied leave (JA-414) and then rested the Quashing Order on the unanswered Lorelei theory and on authorities no party had briefed. *Bayway* sustained reliance on reply evidence because the objecting party never sought a surreply and had no contrary evidence to offer, 215 F.3d at 227; here Petitioners sought leave, tendered their response, and were refused.

### B. Quasi-exhaustion requirement

The Quashing Order purported to apply Rule 26(b)(2)(C)(i) through *Banoka*: a court must limit discovery if the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive." (SPA-8 quoting *Banoka*, 148 F.4th at 68-69 (quoting Rule 26(b)(2)(C)(i)).) That limit is conditioned on proof the information can be obtained with greater convenience or less burden or expense, not that it cannot be ruled out that it may be. *Banoka's* own text requires that showing. The motion supplied none. *Metallgesellschaft's* "[i]f it were clear" holding, which the Quashing Order quoted, likewise demands evidence that discovery is clearly and equally available (SPA-8-9) — and again there was none. The Quashing Order's language of "may" exist (SPA-8) is not equivalent to "can be obtained."

The Quashing Order also converted this Court's newest authority into a holding against discovery. It cites *SBK* as "holding" that consideration of "the foreign location of the documents and the foreign status of their primary custodian" plus overbreadth "militated against allowing for discovery." (SPA-8 citing *SBK*, 168 F.4th at 85.) That passage is the description of *Banoka* in *SBK*, that *Banoka* "did not impose a rule requiring consideration of that factor" and that its affirmance of a denial "does not mean the District Court here abused its discretion in granting this petition." *SBK*, 168 F.4th at 85. *SBK* affirmed the grant of law-firm discovery. The Quashing Order inverts that holding.

The § 1782 Order's findings foreclosed the specified Cayman and CIH routes since the Cayman court cannot compel a non-party. (JA-307.) Balance is beyond Cayman jurisdiction and CIH's disclosure duty reaches only documents "in its possession, custody or power" (JA-122-123 ¶¶11-12), while the granted categories are FHL-side communications CIH would not naturally hold. The § 1782 Order's findings did not adjudicate Lorelei as an alternative source. While Lorelei's identity and relationship were already in the record on the § 1782 application (JA-20), what first appeared on reply was the theory that Lorelei possessed the production, is a New York corporation, and was an alternative § 1782 target (JA-403-404, JA-381.) That theory was unsupported by any convenience, burden, or expense evidence — and it points at the one custodian the Oasis stipulation actually restrains since Lorelei

received the production as a "Receiving Party," bound to use Confidential Information "only for purposes of this litigation and for no other purposes." (JA-345-346 ¶¶3(c), 6.) That same stipulation required the custodian of Confidential Information to return or destroy the subject documents within sixty (60) days following the conclusion of the litigation. (JA-350 ¶20.) Balance's own evidence, submitted in reply, showed that Lorelei had discontinued its claims by March 31, 2025 (JA-381 ¶6, JA-389-390) and that the state court action had previously been fully settled (JA-381 ¶4). The "more natural source" the Quashing Order hypothesized about was thus a former plaintiff under court-ordered obligation to return or destroy the subject evidence, whereas Balance as counsel to the Producing Party was under no such obligation. Rule 26(b)(2)(C)(i) asks whether information "can be obtained from some other source that is more convenient, less burdensome or less expensive." A custodian bound to surrender or destroy the materials is not such a source. Alternative sources were not shown to be less burdensome repositories of the sought information. Carey Olsen, counsel for the Petitioners, had already documented that CIH was "past due" on its first two disclosure deadlines and described the company's "casual disregard for the Directions Order." (JA-296.) This letter and the argument were put before the court. There was no more convenient, less burdensome, or less expensive source than the existing Bates-stamped set on a New York vendor's system, with half the cost already shifted from

the movant by court order. (JA-323.) In *Nigeria*, this Court confronted this same sequence — a § 1782 grant, a motion to quash, and a vacatur of the granted discovery — and vacated, because courts may not "read extra-statutory barriers to discovery into section 1782." 27 F.4th at 148.

Section 1782 itself has no threshold foreign-exhaustion requirement. This Court rejected a "quasi-exhaustion requirement" in *Malev*, repeated the rejection in *Metallgesellschaft*, and again in *Mees*. Rule 26 source-availability limits are not that rejected requirement. They still demand the proof *Banoka* and *Metallgesellschaft* describe. The court may not soften that demand by recycling gate-stage exhaustion policy, or by treating an unadjudicated reply theory as if it filled the gap.

## V. EVEN IF BALANCE'S OBJECTIONS HAD MERIT, RULE 45(d)(3) REQUIRED MODIFICATION OR PROTECTIVE CONDITIONS, NOT OUTRIGHT QUASHAL

Rule 45(d)(3)(A) directs that the court "quash or modify" a subpoena that subjects a person to undue burden. The tailoring instruction of *Euromepa* (Argument II.C), as applied in *Mees*, is that a court "should ordinarily consider whether that defect could be cured through a limited grant of discovery" before denying an overbroad request. *Mees*, 793 F.3d at 302; *accord Heraeus*, 633 F.3d at 598 ("the district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible"); *Biomet*, 742 F. App'x at 700 (vacating

quashal and remanding to consider "a more tailored request, and the imposition of conditions on the use of and access to information").

Both parties placed protective-order paths before the District Court. Petitioners offered a mirroring protective order carrying every protection of the Oasis stipulation into this proceeding (SPA-7 (acknowledging the offer), JA-375-376), and Balance asked, "if the Court declines to quash," for an order to meet and confer on a protective order "along the lines of the Confidentiality Protective Order that governed the production of the documents in the State Court Action" (JA-367), renewed in its reply (JA-405). The one condition the Quashing Order addressed was the mirroring order, and this condition was rejected for the "no assurances" reason Argument II.C shows is legally erroneous. (A rejection resting on legal error earns no deference. *Ratliff*, 354 F.3d at 168.) A court that chose the total remedy without addressing the lesser remedy both sides had identified did not exercise the choice the rule gives it — and it faced no untailored request, only the § 1782 Order's own seventeen selected categories, which it cut to nothing.

## CONCLUSION

The § 1782 Order got the law right, tailored the discovery and allocated its costs; the Quashing Order undid that work on policy the statute had retired and speculation the movant never proved. This Court should reverse the Quashing Order and remand with instructions to reinstate the subpoena as narrowed by the § 1782

Order, with protective terms settled on remand as set out in Argument II.C; in the alternative, it should vacate and remand for a new Rule 45 analysis consistent with this Court's rulings, including consideration of modification and protective conditions.

Respectfully submitted,

/s/ Jeffrey Chubak
Jeffrey Chubak
131 West 35th Street
12th Floor
New York, New York 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Petitioners-Appellants

August 18, 2026

**CERTIFICATE OF COMPLIANCE**

The foregoing brief is in 14-point Times New Roman proportional font and contains 8,621 words as determined by Microsoft Word, excluding the parts of the brief exempted by FRAP 32(f) and thus complies with the typeface, typestyle and type-volume requirements set forth in FRAP 32(a)(5)-(7)(B) and Local Rule 32.1(a)(4)(A) (14,000 words).

/s/ Jeffrey Chubak
Jeffrey Chubak

August 18, 2026

# SPECIAL APPENDIX

# TABLE OF CONTENTS

Opinion and Order of Hon. Katherine H. Parker on Motion to *Quash*, Dated April 10, 2026, Appealed From (ECF No. 32) ................................ SPA-1

28 U.S.C. A. §1782 ........................................................................ SPA-10

Federal Rules of Civil Procedure Rule 45 ................................................ SPA-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/10/2026

507 SUMMIT LLC, et al.,

Applicants,

-against-

BALANCE LAW PLLC *d/b/a* BALANCE LAW FIRM.

Respondent.

**25-MC-235 (KHP)**

**OPINION AND ORDER ON MOTION TO QUASH**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

507 Summit LLC and KOA Capital L.P. (collectively, the "Petitioners"), submitted an application requesting that the Court, pursuant to 28 U.S.C. § 1782, authorize Petitioners to issue subpoenas demanding that Balance Law PLLC d/b/a Balance Law Firm ("Respondent"), produce documents for use in an appraisal proceeding in the Grand Court of the Cayman Islands ("Cayman Court"), brought under Section 238 of the Cayman Islands Companies Act, to determine the fair value of Petitioners' Class A ordinary shares in China Index Holdings Limited ("CIH"). On January 26, 2026, the Petition was granted, but limited the scope of the documents Petitioner sought and permitted further motion practice on any objections to the subpoena issued. (ECF No. 21) The subpoena served seeks documents obtained by Respondent from its non-U.S. clients that were produced in a New York state court action in which its non-U.S. clients were defendants, pursuant to a protective order issued by the state court. The protective order stipulates that the documents were to be used solely for purposes of the state court action.

On February 25, 2026, Respondent moved to quash the subpoena Plaintiff issued in response to the Court's Order based on an issue not fully addressed in the Court's prior Opinion and Order; that its, whether it is contrary to public policy and overly burdensome to require Respondent – a law firm – to produce the documents in light of how and why they were obtained by Respondent and the circumstances under which they were produced in the state court action. For the reasons that follow, Respondent's motion to quash is GRANTED.

## DISCUSSION

### 1. Legal Standard

Generally, after a Section 1782 petition is granted, the Court may address disputes about the scope of the subpoena issued under the Federal Rules of Civil Procedure ("Rule(s)"). *See In re SBK ART LLC*, 168 F.4th 68, 72, 83 (2d Cir. 2026) (finding that after the District Court fashioned an order "to meet the twin aims of Section 1782" and granted the petition, the respondent law firm's concerns were "properly addressed under ordinary discovery rules."); *see also Heraeus Kulzer, GmbH v. Biomet, Inc.,* 633 F.3d 591, 597 (7th Cir. 2011) ("The section 1782 screen — the judicial inquiry that the statute requires — is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court. Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including Rule 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out."). Thus, the Court looks to Federal Rule of Civil Procedure when evaluating a motion to quash or compel compliance with a subpoena issued pursuant to Section 1782. *See, e.g.*, *In re*

*Application of Gorsoan Ltd. and Gazprombank OJSC*, No. 13 Misc. 397 (PGG), 2014 WL 7232262, at *5, *10 (S.D.N.Y. Dec. 10, 2014).

A few general concepts are pertinent here. Federal Rule of Civil Procedure 45 provides that the party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). It also provides that the court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3).

Rule 26(b) cabins discovery to non-privileged information that is both relevant and proportional to the case. Fed. R. Civ. P. 26(b)(1). "[R]elevance is an extremely broad concept for purposes of discovery." *Edmar Fin. Co. v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024) (citing *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019) (Parker, M.J.)). "Information is 'relevant' if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401); *see MacCartney v. O'Dell*, 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2 1357, 1367 (2d Cir. 1991)) (discovery permitted "if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action").

Proportionality "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "When

evaluating undue burden, the court considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed." *Blake Marine Grp. LLC v. Frenkel & Co.*, No. 18 Civ. 10759 (AT) (KHP), 2019 WL 1723567, at *1 (S.D.N.Y. Apr. 18, 2019). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Pearlstein*, 332 F.R.D. at 121 (citing *Villella v. Chemical & Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2018 WL 2958361, at *8 (S.D.N.Y. June 13, 2018)).

Motions to quash are "'entrusted to the sound discretion of the . . . court.'" *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 260 (S.D.N.Y. 2024). The movant carries the burden of showing that a subpoena imposes an undue burden on a witness. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009). To make this showing, a party must set forth "the manner and extent of the burden and the probable negative consequences of insisting on compliance.... [I]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Kirschner v. Klemons*, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citing *Concord Boat Corp. v. Brunswick Corp*., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) and *Croom v. Western Conn. State Univ*., 218 F.R.D. 15, 17 (D. Conn. 2002)).

**2. Analysis**

In the context of a Section 1782 application, the Second Circuit has held that when the target of the Section 1782 discovery is a law firm the court should give heightened scrutiny to the request because, not only may the request implicate attorney-client privilege, but it also may chill open communications between foreign clients and their U.S. lawyers and/or lead to

other downstream consequences of subjecting a non-party law firm to discovery obligations in a foreign proceeding. *See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018).

Courts have permitted Section 1782 discovery to be obtained from law firm respondents when the discovery sought involved non-privileged documents or documents over which the privilege was waived. *See, e.g.*, *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (stating any privilege pertaining to documents were sent by the client to Davis Polk to secure the firm's legal advice, was waived when the client voluntarily authorized Davis Polk to send the documents to the SEC and they had been publicly disclosed); see also *In re Lifetrade Litig.*, No. 17 Civ. 2987 (JPO) (KHP), 2022 WL 3644357, at *2 (S.D.N.Y. Aug. 24, 2022) ("[T]he privilege is waived if the holder of the privilege discloses or consents to the disclosure of the privileged communication to a third party.") (citing *Kleeberg v. Eber*, 2019 WL 2085412, at *7 (S.D.N.Y. May 13, 2019)).

Given that Respondent's client sent the documents at issue for "the purpose of being assessed by Balance Law for (among other things) discoverability and then produced to the plaintiff in the State Court Action," (ECF No. 24, at 9) it may seem, at first glance, that any protection that may have been afforded those documents was abrogated when they were produced in the state court derivative action and that there is limited burden to producing them here. However, unlike in cases where law firms were required to turn over documents that had been produced or made public, in this case, the documents, while not privileged, were produced pursuant to a protective order in litigation.

In *Kiobel*, the Second Circuit held that the district court abused its discretion in granting the Section 1782 petition because the discovery sought would have undermined a preexisting confidentiality order governing discovery produced in prior U.S. litigation and because the documents were in counsel's possession solely by virtue of that prior representation. *Kiobel*, 895 F.3d at 246-48. The Second Circuit's analysis turned centrally on the concern that Section 1782 should not be used as a workaround to evade protective-order restrictions and thereby discourage foreign clients from producing documents to U.S. counsel even under court-ordered confidentiality protections. *Id.; see also In re SBK ART LLC*, 168 F.4th at 81-82 (finding that presence of the confidentiality order was essential to the outcome *Kiobel* decision).

The same concerns that caused the court in *Kiobel* to preclude Section 1782 discovery from a U.S. law firm animate this matter. The documents sought by Petitioners were transmitted from abroad by one of Respondent's foreign clients to enable Respondent to provide legal advice and to make a document production in the New York derivative action. The documents were then produced in that action, not publicly, but pursuant to a protective order that required the documents to be used *only* for purposes of that litigation. Respondent states that its foreign client relied on the state court protective order when the documents were transmitted to Respondent from abroad and produced in discovery. While Petitioners argue that because the documents were previously produced in the state-court action, any concern about chilling attorney-client communications has dropped away, this Court does not agree. Petitioner's argument conflates confidential disclosure in litigation with public disclosure without a prior confidentiality agreement. Nothing in the record suggests that the documents lost their protected status vis-à-vis other litigants or became freely available for use

in unrelated proceedings just because they were produced in the state derivative action which has since settled. To the contrary. The production was made under a protective order designed to confine use of the documents to the derivative action itself. (ECF No. 23-2, at ¶ 6) Further, Petitioners – though expressing a willingness to enter a protective order for the purposes of obtaining the documents sought in this action – have not provided any assurances that the Cayman Islands Court will enforce a similar protective order here. (ECF No. 25, at pp. 3-4); s*ee id.*, at 247 ("*Kiobel* did not (presumably because she cannot) provide the U.S. courts with assurance that Dutch courts will enforce the protective orders that safeguard the confidentiality of Shell's documents. It is perilous to override the confidentiality order; doing so would inhibit foreign companies from producing documents to U.S. law firms, even under a confidentiality order, lest Section 1782 become a workaround to gain discovery.").

Allowing discovery here would convert a limited, court-supervised disclosure into a springboard for broader use in other litigation, thereby vitiating the underlying purpose of the protective order in the derivative action. *See Kiobel*, 895 F.3d at 246-47. As the court in *Kiobel* explained, if foreign clients have reason to fear that producing documents to U.S. counsel – even under a protective order – may later expose those materials to discovery in other proceedings, the likely result is hesitation in communications with counsel, incomplete document transmission, and "bad legal advice to the client, and harm to our system of litigation." *Id.* at 247. It is an inevitable consequence, if universalized, that if litigants are allowed to subpoena documents previously produced confidentially for use elsewhere (notwithstanding a protective order under which they were produced), foreign clients will have diminished confidence that U.S. courts can meaningfully cabin downstream use. *See also*

*Lelchook v. Lebanese Canadian Bank*, 670 F.Supp.3d 51, 55 (S.D.N.Y. 2023) (precluding discovery sought from attorneys under Rule 45, stating "the rationale for declining discovery aimed at foreign entities' U.S. law firms under Section 1782 applies with equal force to the same type of discovery sought pursuant to Rule 45.")

The policy considerations outlined above are factors that can be considered when evaluating if discovery is unduly burdensome and not proportional to the needs of the case. *Id*. That is, the burden imposed by the instant subpoena is significant because Respondent is a non-party law firm with no alleged involvement in the underlying transaction at issue in the Cayman appraisal proceeding, no financial interest in its outcome, and no role as a percipient actor in the events under valuation, and its relationship with its clients is threatened if the discovery is ordered and when allowing the discovery could undermine trust in judicial orders and the process of discovery in U.S. litigation. The burden is underscored when there may be more natural sources for the same information that have not been meaningfully ruled out. *See In re SBK ART LLC,* 168 F.4th at 85 (holding the district court's consideration of "the foreign location of the documents and the foreign status of their primary custodian" in addition to the overbreadth of the request militated against allowing for discovery (internal citations omitted)); *Banoka S.à.r.l. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 68-69 (2d Cir. 2025) ("[A] court *must* limit the frequency or extent of discovery otherwise allowed if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." (internal quotation marks and citations omitted) (emphasis in original)); *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997) ("If it were clear that discovery were equally available in both foreign and

domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative [under Rule 26].”). Indeed, Petitioners have not articulated why they cannot seek the same documents elsewhere. The failure to pursue or explain the unavailability of less burdensome sources for the information sought in the subpoena also weighs against compelling production from counsel. *In re Application of Orthogen International GmbH,* No. 24 Misc. 504 (VSB) (KHP), 2026 WL 311482 (S.D.N.Y. Feb. 5, 2026). Insofar as the above analysis is sufficient to quash the subpoena, I do not address other arguments of Respondent.

**CONCLUSION**

For the reasons set forth above, the motion to quash is GRANTED. Within one week of this Opinion and Order, the parties shall submit a letter to the Court indicating whether there are any outstanding issues for the Court to address or whether, alternatively, this matter can be closed.

**The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 22**

**SO ORDERED.**

Dated: April 10, 2026
New York, New York

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part V. Procedure
Chapter 117. Evidence; Depositions (Refs & Annos)

28 U.S.C.A. § 1782

# § 1782. Assistance to foreign and international tribunals and to litigants before such tribunals

Effective: February 10, 1996
Currentness

**(a)** The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

**(b)** This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 949; May 24, 1949, c. 139, § 93, 63 Stat. 103; Pub.L. 88-619, § 9(a), Oct. 3, 1964, 78 Stat. 997; Pub.L. 104-106, Div. A, Title XIII, § 1342(b), Feb. 10, 1996, 110 Stat. 486.)

Notes of Decisions (512)

**O'CONNOR'S CROSS REFERENCES**
**O'Connor's Federal Rules Civil Trials:**

See ***O'Connor's Federal Rules***, "Discovery for proceeding in foreign tribunal," ch. 6-B, §2.2.14.

28 U.S.C.A. § 1782, 28 USCA § 1782
Current through P.L. 119-102. Some statute sections may be more current, see credits for details.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

United States Code Annotated
Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
Title VI. Trials

Federal Rules of Civil Procedure Rule 45

# Rule 45. Subpoena

Currentness

**(a) In General.**

**(1)** ***Form and Contents.***

**(A)** *Requirements--In General*. Every subpoena must:

**(i)** state the court from which it issued;

**(ii)** state the title of the action and its civil-action number;

**(iii)** command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises; and

**(iv)** set out the text of Rule 45(d) and (e).

**(B)** *Command to Attend a Deposition--Notice of the Recording Method*. A subpoena commanding attendance at a deposition must state the method for recording the testimony.

**(C)** *Combining or Separating a Command to Produce or to Permit Inspection; Specifying the Form for Electronically Stored Information*. A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition, hearing, or trial, or may be set out in a separate subpoena. A subpoena may specify the form or forms in which electronically stored information is to be produced.

**(D)** *Command to Produce; Included Obligations*. A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(2)** ***Issuing Court.*** A subpoena must issue from the court where the action is pending.

**(3)** ***Issued by Whom.*** The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service. An attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court.

**(4)** ***Notice to Other Parties Before Service.*** If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.

**(b) Service.**

**(1)** ***By Whom and How; Tendering Fees.*** Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies.

**(2)** ***Service in the United States.*** A subpoena may be served at any place within the United States.

**(3)** ***Service in a Foreign Country.*** 28 U.S.C. § 1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country.

**(4)** ***Proof of Service.*** Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server.

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery*****.** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions*****.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection*****.**

**(A)** *Appearance Not Required*. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena*****.**

**(A)** *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted*. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative*. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents*. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified*. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form*. The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information*. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(f) Transferring a Subpoena-Related Motion.** When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

**(g) Contempt.** The court for the district where compliance is required--and also, after a motion is transferred, the issuing court--may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

**CREDIT(S)**
(Amended December 27, 1946, effective March 19, 1948; December 29, 1948, effective October 20, 1949; March 30, 1970, effective July 1, 1970; April 29, 1980, effective August 1, 1980; April 29, 1985, effective August 1, 1985; March 2, 1987, effective August 1, 1987; April 30, 1991, effective December 1, 1991; April 25, 2005, effective December 1, 2005; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007; April 16, 2013, effective December 1, 2013.)

<**Amendments received through April 1, 2026**>

**ADVISORY COMMITTEE NOTES**
1937 Adoption

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2026, I electronically filed the foregoing Brief for Petitioners-Appellants and Special Appendix with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the Court's Appellate Case Management System (ACMS). I further certify that all participants in the case are registered ACMS users and that service will be accomplished through ACMS.

/s/ Jeffrey Chubak
Jeffrey Chubak

August 18, 2026